### BRANDT v. VANDERVEEN.

1. GUARANTY—ACCEPTANCE—LIABILITY—EVIDENCE—SUFFICIENCY.
   Upon a suit for an adjudication of the liability of certain of the defendants upon an instrument of guaranty, the conclusion of the court below that the evidence that said instrument was never accepted by plaintiff bank is practically undisputed, *held*, not sustained by the record.

2. SAME—CONSIDERATION.
   Defendants' contention that said instrument was given to secure a future loan which was not made, and that it was therefore void for want of consideration, *held*, not sustained by the record, the evidence sustaining plaintiffs' contention that it was given to cover any indebtedness already existing as well as future loans.

3. EVIDENCE—PAROL EVIDENCE—WRITTEN INSTRUMENTS.
   Parol evidence is not admissible to contradict or vary the terms of a written instrument.

4. GUARANTY—DEFENSES—EVIDENCE—SUFFICIENCY.

Where defendants' evidence, the admissibility of some of which was questionable, was insufficient to establish the defense relied upon, the decree of the court below in their favor will be reversed, and decree entered in this court for plaintiffs.

Appeal from Kent; McDonald (John S.), J. Submitted October 21, 1920. (Docket No. 15.) Decided March 30, 1921.

Bill by Adolph H. Brandt, trustee, and the Grand Rapids Savings Bank against Harry Vanderveen and others to foreclose a trust deed as a mortgage and for an adjudication of the liability of certain of the defendants to plaintiff bank upon an instrument of guaranty. From a decree for plaintiffs, but dismissing the bill as to defendants Peter Vanderveen and Thomas Newhof, plaintiffs appeal. Reversed, and decree entered for plaintiffs against all defendants.

*Butterfield, Keeney & Amberg,* for plaintiffs.

*Bartel J. Jonkman,* for defendants.

STEERE, C. J. This suit was commenced in the circuit court of Kent county, in chancery, on September 25, 1918, to recover an indebtedness which defendant Harry Vanderveen owed the Grand Rapids Savings Bank, to foreclose a trust deed held in that connection by plaintiff Brandt, trustee, as a mortgage in behalf of said bank, and for an adjudication of the liability of defendants Peter Vanderveen and Thomas Newhof upon an instrument of guaranty in the sum of $25,000 signed by them, purporting to secure in that amount the indebtedness of Harry Vanderveen to said bank.

Defendants Harry Vanderveen and Anna Vanderveen, his wife, made no defense and allowed the bill to be taken as confessed against them. Peter Vanderveen and Thomas Newhof answered and asked

affirmative relief by cross-bill from the instrument of guaranty they had given, claiming that it had never been accepted by said bank and was void for want of consideration. The case was heard upon pleadings and proofs taken in open court, resulting in a decree in favor of plaintiffs for foreclosure of the trust deed, conceded to be in its nature a mortgage, and adjudicating a past due personal indebtedness owing by Harry Vanderveen to said bank in the sum of $78,544.78 on January 7, 1920, the date of the decree, but dismissing the bill of complaint as to defendants Peter Vanderveen and Thomas Newhof because "not liable as guarantors of the said indebtedness set up in said bill of complaint to the said the Grand Rapids Savings Bank." Plaintiffs have appealed from dismissal of the bill as to those defendants, and the only controversy involved here is the liability of defendants Newhof and Peter Vanderveen upon the instrument of guaranty undisputedly signed by them and delivered by Harry Vanderveen to plaintiff Adolph H. Brandt, then vice-president and an executive officer of the bank. It is as follows:

"The Grand Rapids Savings Bank of Grand Rapids, Michigan, is hereby requested to give and continue to Harry Vanderveen credit as he may desire from time to time, and in consideration thereof, I hereby guarantee payment of any indebtedness, whether direct or contingent, now or hereafter owing to said bank by said Harry Vanderveen, and agree to indemnify said bank against any loss thereon; provided, however, said bank shall in no event collect from the undersigned a greater sum than $25,000.

"Notice of the acceptance of this guaranty and of any indebtedness at any time covered by the same is hereby waived. This guaranty shall continue until written notice of the discontinuance thereof shall be received by said bank. In case of insolvency, bankruptcy or death of one or more signers thereof, it shall continue as to the others, and the bank may give and continue

credit hereunder by making loans, renewing notes or otherwise, unless and until written notice of discontinuance is given by the other signers.

"Grand Rapids, Michigan.   Dated January 22, 1917.
                                  "PETER VANDERVEEN,
                                  "THOMAS NEWHOF."

Defendant Harry Vanderveen was a resident of Grand Rapids, engaged chiefly in the business of highway construction and improvement under contract. For several years he had been a customer and borrower from the Grand Rapids Savings Bank, usually transacting his business there with Brandt, whom he had known for over 15 years. Earlier he had done his banking business with the Kent State Bank where Brandt was then employed, and says "when he came over to the Grand Rapids Savings Bank I went with him." He was a liberal borrower, had apparently been a fairly successful contractor and had acquired property, both real and personal, of considerable proportions above his liabilities. A financial statement made by him on March 17, 1914, showed his net worth above liabilities to be about $105,000. Another statement made February 1, 1916, showed over $150,000. Brandt, who appears to have been a friend and sponsor for him, testified that he had a $35,000 line of credit at the Kent State Bank when Brandt was there, "and he said if I would give him the same line he would come here with his business, so I gave him that same line." He continued thereafter a customer of the bank for some seven years, during which time Brandt was its vice-president.

The $35,000 line of credit Brandt gave him was maintained at the Grand Rapids Savings Bank for a considerable period, with indicated satisfactory results to both parties while not exceeded, but later his expanded undertakings and financial needs seem to have grown beyond his reasonable resources and credits. In the spring of 1916 he owed the bank the

full amount of his $35,000 line of credit unsecured, $18,000 of notes with collateral security and $15,000 secured by mortgage, while his unsecured indebtedness to the bank on September 9th of that year had increased to $46,000.

In 1916 he was carrying on contract operations in Benton Harbor, Ypsilanti and Pontiac, the amount of which is not shown, and during the first six months of the year entered into contracts for work in Monroe county amounting to over $530,000 for the faithful performance of which he gave bonds obtained from a surety company. These large obligations, comprehending operations on a larger scale than he had ever before undertaken, as he admitted, affected his financial standing with the bank as viewed by its directors. Some time during that summer, in August as he testified, Brandt told him "I had to have security for any further advances, * * * told me he couldn't let me have any more money until I gave him collateral of some kind or security." Upon this they substantially agree, although at variance in certain other particulars. He then promised to give whatever security was desired and states that Brandt asked for security upon the so-called "Robinson road property," as to which they agreed. The Robinson road property is that involved in the trust deed agreement before mentioned, foreclosure of which as a mortgage was asked and granted in this suit. In telling of that transaction Vanderveen testified in part as follows:

"If my recollection is right, Mr. Brandt loaned me another ten thousand dollars before the papers were finally completed.

"Q. And that was because you had to have it for the needs of your business, a larger amount than you had been accustomed to borrowing?

"A. No, I don't know; you might let me say here, at any time I never was turned down and I don't know how much I did owe the bank at any one time in the

past, so there wasn't any custom about it; it was the amount I required and I was never turned down any time; I wanted money; I got it."

The Robinson road property was valued by Vanderveen in his statement of February 1, 1916, at $35,000. He held it under a land contract from a man named Hanna. There yet remained unpaid upon said contract $4,000. Arrangements were made between the interested parties by which Hanna deeded the property to Brandt to hold as trustee for the bank and the bank paid Hanna the $4,000 yet owing him under the contract. Vanderveen then gave the bank his note for that amount. A trust agreement embodying the details and terms of the transaction was thereafter executed between Vanderveen and Brandt. The deed from Hanna to Brandt is dated September 9, 1916. The trust agreement was drawn up by Roger W. Butterfield, an attorney and one of the bank's directors, and executed by the parties October 28, 1916.

This instrument makes mention in its introductory recitals of Vanderveen's indebtedness to the bank upon notes given it by him aggregating $35,000, which as before noted had been the limit of his line of unsecured credit, of the $8,000 more secured by collateral and $10,000, so secured, states that he desires the bank to advance him the $4,000 necessary to complete his payment for the land offered as security and to make him certain new loans not to exceed in the aggregate $25,000, and that the bank is willing to do this, "provided that the entire indebtedness of the said Harry Vanderveen, except the collateral loans above mentioned, are secured." Passing from the recitals, the agreement then makes the deed held by Brandt in trust for the bank in effect a blanket mortgage to secure Vanderveen's present and future indebtedness to it, with certain exceptions and within a fixed limit, as follows:

"The said second party (Harry Vanderveen) agrees to pay, in accordance with their terms, all notes now or hereafter held, during the life of this instrument, by the Grand Rapids Savings Bank, with the interest thereon, according to the terms thereof, and all indebtedness of the said Harry Vanderveen to said bank, irrespective of the character of the paper by which it is evidenced, and all new notes, new loans, or renewals thereof. Provided, however, that the sum or sums hereby secured shall in no case exceed the aggregate of sixty thousand dollars ($60,000), it being the intent hereof that said deed and this instrument shall be a continuing security for all and every part of the indebtedness of the said Harry Vanderveen to said bank, except the notes for eight thousand dollars ($8,000) and ten thousand dollars ($10,000) secured by collateral as aforesaid, until the same is fully paid and discharged, according to the terms thereof. It is expected that the notes evidencing said indebtedness or some of them, may be renewed from time to time, but such renewal shall not affect the security herein provided for, nor shall any agreement to renew such notes be inferred from this instrument."

Harry Vanderveen's Monroe county contracts resulted disastrously to him. He testified on cross-examination that his efforts to carry them out ceased in July, 1917, when the county notified him it had taken over the work and would proceed to complete the contracts, and those of his men who remained on the job thereafter worked for the surety company; that when he ceased operations he owed the Grand Rapids Savings Bank about $90,000, excluding the two notes before mentioned of $8,000 and $10,000 secured by collateral and two mortgages of $15,000 and $25,000, respectively, which are not involved in this controversy, except as the trial court apparently refers to the latter mortgage, given May 14, 1917, as taken for a loan of $25,000, to secure which the guaranty was offered and rejected.

The trial court found the instrument of guaranty

was delivered to Brandt by Harry Vanderveen to be held as security for a further loan to him of $25,000 and said in part:

"The guaranty was executed and delivered to Mr. Brandt, who took it before the board of directors at a meeting some time in January, 1917. The board refused the loan and referred the matter of future credit to Mr. Butterfield, and on Mr. Butterfield's report the loan was made on the real estate security offered by Harry Vanderveen at the time the guaranty was suggested by Mr. Brandt.    *    *    *

"It clearly appears from the evidence that the understanding and intention of all the parties was that the guaranty was given as an inducement for and in consideration of a further loan of $25,000 to Harry Vanderveen.    *    *    *

"It is my conclusion from the testimony, which is practically undisputed, that the instrument of guaranty was never accepted in law or in fact by the bank and therefore no liability arises thereunder against the defendants Peter Vanderveen and Thomas Newhof."

Finding that granting a further loan of $25,000 was "the first and main consideration" the court held, "the fact that some of the officials of the bank retained the guaranty and treated it as security for renewals and other past indebtedness" would not bind the guarantors.

We are unable to follow the court's conclusion that the instrument of guaranty was never accepted by the bank is practically undisputed. Defendant's claim of non-acceptance finds its support in the testimony of Harry Vanderveen that Brandt so told him, which is denied by the latter with other evidence, both oral and written, tending to show that it was accepted by the bank in good faith according to its terms. The instrument itself signed by the guarantors uninfluenced by any one connected with the bank negatives the proposition that it was given exclusively, or primarily,

to secure a future loan of $25,000. The only mention of that amount is as a limit of the guarantors' liability. To the amount they guarantee payment of "any indebtedness" of Harry Vanderveen, "whether direct or contingent, now or hereafter owing said bank" by him, and agree "to indemnify said bank against any loss thereon," also agreeing that the guaranty "shall continue until written notice of the discontinuance thereof shall be received by the bank." Peter Vanderveen is a brother of Harry, while Thomas Newhof is a compatriot and friend. Both were business men of mature years and recognized financial standing, presumptively possessed of the common knowledge as to indorsements and other obligations in' writing which business experience brings, including banking methods learned while customers at this bank and others. They did their banking at this bank and Newhof was himself a borrower there. The provisions of the guaranty are plainly expressed, within the scope of a business man of ordinary understanding. They executed it at the instance and for the accommodation of Harry Vanderveen, unsolicited by any officer of the bank and with the knowledge that he was a borrower there. No written qualification as to its purpose or import, limiting it to a particular loan or otherwise, accompanied it or was later served upon the bank to which it ran. Vanderveen delivered it at the bank to Brandt. What passed between them was oral and is in dispute. It was in fact filed as bank security and entered in its records of guaranty bonds as its property under date of January 22, 1917, and later transferred to a new book of live guaranties. The following year, on February 13, 1918, notice that it was held and in full force was mailed to the guarantors according to the usages of the bank in such cases. Newhof denied receipt of this notice, while Peter Vanderveen testified he did not

recall its receipt. Both admitted receipt of such notice the following year.

Upon the instrument's acceptance by the controlling bodies and officers of the bank at its face value without knowledge of any qualification the following evidence is undisputed. Gilbert L. Daane, a member of the board of directors and also a vice-president, testified that at the first meeting of the board after he became an officer, held in January, 1917, various matters relating to the nature of securities held by the bank were brought up and gone over as was customary at such meetings, including this guaranty of Vanderveen's, and "it was brought out at the meeting that we were not quite satisfied with the amount of money Harry Vanderveen had, with the security we had to protect it;" that a discussion came up and one of the directors inquired as to the financial worth of Mr. Newhof, to which Brandt replied he had evidence Newhof was worth $100,000. Nothing was said at that meeting about a new loan. At a meeting of the bank's credit, or discount, committee shortly after January 22d, Brandt called attention to the guaranty, given primarily, as he claimed, to secure what Harry already owed, as also for any other purpose covered by its provisions. The committee so accepted it, as it read, without knowledge of any claimed oral conditions as to additional loans. Brandt did ask the board to grant Vanderveen further loans to the extent of $25,000, claiming that with his existing loans thus amply secured he was good for further credit. The board was adverse to increasing his loans and declined to extend him further credit, but on Brandt's insistence that he would pull through, was good and could give further security for what he borrowed, the matter was referred to Mr. Butterfield, resulting ultimately in an additional loan of $25,000 secured by the mortgage of May 14, 1917. William Alden Smith, president of the

bank, testified that he was familiar with this guaranty held to secure Vanderveen's indebtedness and in September, 1918, had occasion to refer to it when pressing Newhof for payment of his own past due indebtedness, as to which he was very neglectful; that he insisted on Newhof paying a past due $10,000 note, emphasizing that with his obligation on Harry Vanderveen's bond for $25,000 his indebtedness to the bank was too large and must be reduced to the amount of that bond, in reply to which Newhof said "I am good for it"; that there was then no question about his liability on the guaranty, saying, "He made no dispute, in fact acknowledged his obligation on that bond to me. I think he told me he would pay his half. I am quite sure of it. I say I think so in order to be cautious." Newhof, on cross-examination, testified he said something to Smith on that occasion, but when pressed as to details and what he said about them replied: "That is what I don't know."

In view of the foregoing and other testimony of like import we are not convinced it clearly appears from the evidence it was the "understanding and intention of all the parties" that the guaranty was given in consideration of a further loan of $25,000 to Harry Vanderveen, whose testimony that it was requested and delivered by him to Brandt exclusively for that purpose must be accepted as conclusive to sustain that view. His business at the bank was done mostly with and through Brandt, whose intercession with the board of directors and discount committee had succeeded in obtaining loans beyond what appears to have been his ability to pay. With his enlarged undertakings he was repeatedly importuning Brandt for further loans, while the latter as his then friend and sponsor was trying to help him out. The situation which runs through this story is conservatively stated by Mr. Butterfield as follows:

"Along in 1916, the bank understood that Mr. Vanderveen had entered into very large contracts, and from that time on his very large indebtedness to the bank (which is a fact, and it was continually increasing) was a matter of constant comment and there was a good deal— It came up before the board frequently."

The stories of Brandt and Vanderveen as to the purpose and occasion of giving the guaranty are in direct conflict. Vanderveen testified that on January 20, 1917, he was at the bank about money, that he wanted $25,000 more—"some right at that time and some in the near future," that Brandt "said as to why they wanted this guaranty that the bank had advanced me all that they would advance me without security," suggested an instrument of guaranty and who to get as signers, gave him a blank form which he put in his pocket and got the proposed sureties to sign two days later, January 22d, took it to the bank that day and delivered it to Brandt, who said "he would have to take it up soon as possible and have it arranged," that he got no money then or later when he saw Brandt about it, but that late in April he was in urgent need of money and talked with Brandt about it who "brought the guaranty bond, so-called, out of his desk and told me that the credit committee had refused it, that they wanted other security." He did not take back the guaranty,—"thought it was immaterial— never gave it a thought," for Brandt most always had some of his papers. On cross-examination he said:

"I have never gone to Brandt or any other officer of the bank and asked that the guaranty be given up * * * Yes, I have, too, I asked to have it given up in July, 1917; that was the first time that my attention was called to it that the bank held this paper. * * * I went to Mr. Brandt for it, or to see about it. I demanded back this paper from Mr. Brandt."

This is absolutely denied by Brandt, who testified the guaranty was given and accepted to protect existing unsecured indebtedness, as Vanderveen well understood, and the first he ever heard him claim to the contrary was when they were discussing the matter just previous to commencement of this suit and "Harry said 'That bond didn't amount to anything and I will prove it. I got money to back it.'" That in the fall of 1916 he learned Vanderveen was having trouble with the supervisors of Monroe county over his work not being done according to contract, resulting in his estimates being held back and difficulties with the Monroe bank, that conditions assumed a more unfavorable aspect, and he was apparently "slipping," the Robinson road property valued in his financial report at $35,000 and claimed by him as worth $40,000 was not deemed adequate security for more than he had already borrowed, and additional security was demanded before he could obtain further loans; to which he agreed, offering real estate security or a chattel mortgage on his contractor's outfit, which Brandt suggested might impair his standing with his surety company more than would indorsers or a guaranty bond; that Vanderveen agreed with him and proposed the names of his brother Peter and Newhof, whom Brandt thought would be acceptable, and filled out a guaranty form accordingly, except the date, which Vanderveen took away, promising to have it executed by them and return it. That on the strength of such promise several times repeated he let him have loans of $10,000, $5,000 and $1,500, but he in the meantime neglected to return the guaranty until on January 20, 1917, he applied for more money, claiming he would eventually want $25,000. Brandt told him his application would not be considered until he produced the security for his past indebtedness as he had promised, and two days later, on January 22d, he delivered the guaranty

with the distinct understanding and agreement that it was to secure past loans, to be taken exactly as it read, and it was so accepted by the discount committee; that he had told Vanderveen if this was done he would try to obtain the additional credit he wanted, and did make request to the board for it which they declined unless security was given for such loan, and he so advised Vanderveen but never at any time told him the guaranty had been refused, as Vanderveen testified.

These two former friends were examined and cross-examined at length. Whatever may be the inconsistencies in their testimony as emphasized by skilled counsel of the respective sides, in the particulars pointed out they consistently and directly contradict each other. They are not altogether satisfactory witnesses. An examination of their testimony in detail is convincing that neither ranks as a conservative, impartial and entirely consistent witness in all respects. The best and worst that need be said of their testimony as a whole is that we are unable to find from it that they are not of equal credibility.

In relation to the $25,000 mortgage given in May, 1917, Newhof testified that Brandt told him he would not give Harry any money "before I see you boys get security," later telling him that he had let Harry "have $50,000—$25,000 on that note and $25,000 on real estate security," and the claim is made that this $25,000 mortgage was taken to secure the signers of this guaranty. Brandt denies making any such statement, but if true it can only be upon the theory that the guaranty was accepted and in full force, while the principal defense in this case is based upon its nonacceptance. It is undisputed that Harry Vanderveen was in urgent need of money in the spring and appealed to Brandt to help him get it from the bank and Brandt promised to do what he could for him, took it

up with the discount committee and claimed that Vanderveen still had real estate which could be safely taken as security. After some discussion and inquiry the matter was referred to Mr. Butterfield to investigate and report upon. Brandt with Vanderveen went to his office to present Vanderveen's security. The latter at first denied any recollection of an interview with Mr. Butterfield, but on his memory being refreshed, recalled that they did go to Butterfield and he drew up the papers, was certain the mortgage was neither said to be nor intended as security for the guarantors; further than that he was not clear as to what occurred. Of this transaction Mr. Butterfield testified that he went over the whole matter with Vanderveen in detail, as to the character of his property and what it was worth, and it was finally concluded to make him the loan, which "had absolutely nothing to do with this guaranty so far as I ever heard"; that the mortgage "was given for the sole purpose of securing a fresh and distinct loan of $25,000," saying:

"So far as the other moneys that he was already owing was concerned the bank relied upon the securities it already had. As to this general line of $65,000 I know that the bank relied on the mortgage and on the guaranty and the collateral security which they had for two notes, and this $25,000 mortgage stood, so far as I ever heard, independently."

It is also contended for defendants that the guaranty was without consideration because the loans emphasized as secured by it were made before it was given on the strength of the trust deed, and the $25,000 afterwards obtained was secured by a later mortgage. It is true that before the date and delivery of the guaranty Vanderveen had obtained from the bank through Brandt loans amounting to $65,000, secured only by the trust deed covering real estate appraised at $35,000 and never claimed by Vanderveen at more

than $40,000. The trust instrument, while naming $60,000 as an amount which should "in no case" be exceeded, does not obligate the bank to loan him that amount. It imposes the express conditions that Vanderveen's entire indebtedness, except the collateral loans mentioned, shall be secured and that he shall pay all his notes, renewals thereof, etc., past and future, according to their terms. Most of this indebtedness was evidenced by promissory notes, comparatively short-time bank paper, some were on demand while others were for 30 and 60 days, and some perhaps for a longer time, though not distinctly shown. Renewals were contemplated, but it was expressly provided no agreement to renew should be inferred from the instrument. When in October his indebtedness not otherwise secured than by a mortgage on property worth at most $40,000 had reached $46,000 and he applied to Brandt for further large loans, a demand for further security would not seem, under the circumstances shown, improbable or out of harmony with the requirement that Vanderveen's entire indebtedness should be secured. But assuming he then made no such demand, when on January 20th Vanderveen's loans not otherwise secured had grown to $65,000, or $5,000 in excess of the amount the instrument expressly provided should in no case be exceeded, and he asked for more large loans, Brandt's testimony that he then demanded security for existing unsecured indebtedness as a condition precedent to negotiations for further extension of credit in any particular is made yet more probable by the situation shown at that time.

There is abundant evidence of consideration to sustain this guaranty, which covers "any indebtedness whether direct or contingent now or hereafter owing to said bank by said Vanderveen. In reliance on this guarantee he was granted further loans by certified checks which he afterwards paid, extension of credit

by repeated renewal of his notes as they fell due covering this entire line of indebtedness, loans to other parties upon notes which he indorsed were granted; after January 22d renewals were granted of notes indorsed by him to the amount of $6,500, which had been given by a hardware concern in which he was interested, as late as September 8, 1917, his note extending time of payment of $1,727.25 was given and accepted for an overdraft and some interest.

The rule is elementary that parol proof is not admissible to contradict or vary the terms of a written instrument, and it is said in *Coots* v. *Farnsworth*, 61 Mich. 497, that this rule "should be rigidly enforced in case of bonds, if at all." Under this rule it is urged for plaintiffs that much of Harry Vanderveen's testimony relating to oral agreements and understandings between himself and Brandt is incompetent. Conceding the general rule, it is contended by defendants' counsel that the evidence objected to was admissible to explain and construe uncertain and ambiguous features of the guaranty. We fail to fully recognize the ambiguities contended for, but taking into consideration all of Vanderveen's testimony, we are unable to conclude from this record, considered in its entirety, that the defense urged against this written instrument is tenable.

That portion of the decree appealed from, dismissing the suit against defendants Newhof and Peter Vanderveen, is reversed, with costs against them to plaintiffs, and a decree may be entered here granting relief as prayed for in the bill of complaint.

MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.