C. I. T. Corporation *vs.* Daniel Deering, Jr.

Maltbie, C. J., Haines, Banks, Avery and Jennings, Js.

Argued December 4th, 1934—decided January 21st, 1935.

*Louis Goldschmidt,* for the appellant (defendant).

*A. D. Slavitt,* for the appellee (plaintiff).

HAINES, J. The plaintiff offered evidence to prove and claimed to have proved that it was engaged in the business of financing the purchase and sale of automobiles under the partial payment plan; that on ·January 26th, 1931, The Norwalk Sales & Service, Inc., was a dealer in automobiles and located in Norwalk; that on that date the latter addressed a communication to the plaintiff saying, in effect, that it desired to offer the plaintiff, from time to time, notes or other obligations taken from purchasers of automobiles under various contracts or leases, which latter were to be assigned and delivered with the notes, the notes to be endorsed "without recourse;" that in consideration of such purchase by the plaintiff "we agree that the 'Dealers' Protection Agreement' on the second page hereof shall apply to the purchase of such notes and contracts and shall constitute our mutual obligations with respect thereto, including our agreement to repurchase such cars as may be repossessed. . . . This agreement is effective as to all notes purchased by you from us after the date above set forth upon which our endorsement is intended to be and to continue limited as an endorsement 'without recourse,' and any previous agreement in force between us is hereby superseded as to such notes purchased hereafter;" that on March 14th, 1931, the defendant herein

executed a guaranty whereby he, in consideration of the extension of credit to the Sales Corporation, agreed he would promptly and faithfully pay and discharge the Sales Corporation's obligations present and future to the plaintiff, and would pay all losses, costs, attorneys' fees, and expenses suffered by the plaintiff by reason of any default by the Sales Corporation.

Evidence was also offered that at the time this guaranty was signed no notes discounted by the Sales Corporation with the plaintiff were in default; that at various times the plaintiff purchased from the Sales Corporation notes and obligations of the character described, and in one instance financed a demonstrator car known as "The White Ghost" for the Sales Corporation under a trust agreement; that title to this car remained in the plaintiff until the draft attached to the trust receipt was paid; that from time to time the plaintiff repossessed certain cars and offered to turn them over to the Sales Corporation upon the payment of the obligation on them, and upon the failure of the latter to do so, they were sold at public sale and notice sent to the defendant of the loss incurred by the plaintiff, all as provided in the contract; that a detailed statement of losses was furnished to the defendant by the plaintiff and was received by him; that the total loss thereby shown amounted to $1083.57; that the "White Ghost" car was repossessed by the plaintiff when the draft was not paid, notice sent to the defendant and an opportunity given to him to pay the amount due and take possession of the car, and when the defendant failed to do so, the plaintiff sold the car and incurred a loss of which it advised the defendant; that the Sales Corporation was adjudicated a bankrupt before this suit was brought; that none of the losses suffered by the plaintiff had occurred before the bankruptcy. The finding that the

defendant admitted that he had an interest in the Sales Corporation is attacked because not stated in the plaintiff's counter-finding, but it must stand. A trial court in making a finding is not restricted to a statement of such matters only as appear in a draft-finding or counter-finding submitted to it. Aside from this latter claim, the errors assigned all relate to the failure of the court to charge in various respects and to portions of the charge as given.

One of the requests was, that the plaintiff "cannot recover for any transactions before the date of the guarantee." The court, however, correctly charged that the fact that some of the sales of notes and contracts were made to the plaintiff before the date of the guaranty, did not preclude the plaintiff from recovery for losses thereon, since none of them were in default at the time the guaranty was signed; and that the guaranty also covered the agreement, which latter was made by the Sales Corporation before any sales of the notes and contracts in question were negotiated.

The defendant discusses at length the question of consideration for the guaranty. It is true that the guaranty was executed after three transactions between the plaintiff and the Sales Corporation had taken place; but this was an entire and continuing guaranty, not divisible as applying to transactions separately. When it was executed the plaintiff was already extending credit to the Sales Corporation, and in consideration of its continuing to do so, the guaranty was given. The plaintiff did so continue and thus rendered the consideration for the guaranty as a whole, covering all transactions within its terms. *Baretz* v. *Steinmetz,* 102 Conn. 148, 150, 128 Atl. 18; *Brandt* v. *Vanderveen,* 213 Mich. 121, 182 N. W. 35; *Hargroves* v. *Cooke,* 15 Ga. 321, 325; *W. T. Rawleigh Co.* v. *Washburn,* 80 Mont. 308, 316, 260 Pac. 1039; *W. T.*

*Rawleigh Co.* v. *Walker*, 117 Okla. 256, 246 Pac. 417; 1 Williston, Contracts, § 134.

The court in its charge remarked to the jury: "A great many dealers in automobiles are not able to finance their business, they haven't the capital to go out and buy cars, and most of the manufacturers, I think, insist nowadays in having a certain amount of cash before the car is delivered." The defendant assigns this as error. This is but part of a fuller statement made in explaining to the jury the situation and bearing of the transaction which gave rise to the present action. It could not have harmed the defendant and was entirely proper for the purpose for which the statement was made.

Error is also assigned for another remark made in connection with the claim of the defendant that he didn't read the guaranty before he signed it: "A business man has no right to sign an obligation which may mean hundreds of dollars, may amount to that in the end, without knowing what he is signing." This is but a fractional part of the court's statement on this subject. The defendant has no proper cause for complaint, and this fully appears when the entire statement is read.

It is assigned as error that the court told the jury as follows: "Just for your information I would say the amount claimed will be $1083.57, which appears in the pleadings here. . . . So if you find that the plaintiff is entitled to damages, that amount would be helpful to you in arriving at what the plaintiff claims." This appears to have been the amount of the total losses on all the transactions as reported to the defendant from time to time by the plaintiff, and the amount shown by the bill of particulars appearing in the record. The plaintiff had offered evidence in support of all this, and it does not appear from the finding that any evi-

dence was offered by the defendant to dispute it. This reference to these figures for the assistance of the jury was an entirely proper one and not subject to just criticism by the defendant. ,

In connection with the assignments which we have covered, we call attention to our oft repeated admonition that it is never permissible, or fair to the trial court, to detach certain portions of a charge, incomplete in themselves, from their proper context, and present them as errors. *O'Connor* v. *Zavaritis*, 95 Conn. 111, 121, 122, 100 Atl. 878; *Dunn* v. *Poirot*, 97 Conn. 713, 717, 118 Atl. 33; *Bogudski* v. *Backes*, 83 Conn. 208, 76 Atl. 540.

One assignment is a statement made by the court with reference to the demonstrator, the "White Ghost," which was bought by the Sales Corporation under a trust agreement. The court charged, in effect, that while this did not involve the sale and purchase of notes and contracts as in the case of other cars and was not referred to in the original letter signed by the Sales Corporation, it was within the terms of the guaranty. A reference to the guaranty as it appears in the record sustains the position of the court, and the charge was correct.

The remaining assignment, we conclude, is the one upon which the defendant chiefly relies. He asked that the jury be instructed that if the plaintiff had other security than the guaranty, it was incumbent upon it to show that it had used due diligence and exhausted all feasible remedies in collecting from the principal and others whose security it held. The reference was to the Sales Corporation as principal and the various notes and accompanying conditional sales contracts, as furnishing other security. These contracts contained a provision that upon default by the purchaser, he would be liable for any deficiency upon

the repossession and resale of the car. The trial court treated the guaranty as conditional and charged the jury that the applicable rule of law was that the person to whom such a guaranty was given, must make every reasonable effort to secure payment from the principal before he could hold the guarantor liable unless he is excused from so doing, as he was in this case, by the bankruptcy of the principal. It then charged that it was not necessary, before holding the defendant for losses incurred under this guaranty, that it should have proceeded by law suit to try to collect from the various signers of the notes. The agreement between the plaintiff and the Sales Corporation obligated the latter to pay the former upon demand in cash, the amount of any unpaid balance remaining due on a note or other obligation taken upon the sale of a car either after the dealer had accepted the car from the plaintiff upon the terms specified in the agreement, or after, in default of such acceptance, the plaintiff had sold the car. In such a situation, the rule of law requiring the holder of the conditional guaranty to use due diligence to collect from the principal before seeking to hold the guarantor, does not require the holder to use like diligence to collect from others who may also be liable to it for the debt upon separate instruments.

The jury were told, in effect, that if they found, as they obviously did, that the Sales Corporation had not discharged its obligations to the plaintiff in connection with five cars upon which losses had been incurred, "then the obligation of Mr. Deering arose, and from that point he became liable if you find, of course, that he did sign this guaranty and that he agreed to do these things." This is a correct statement of the single condition attached to this guaranty and of the defendant's obligation thereunder. The guaranty is

obviously not conditioned upon the plaintiff's unsuccessful effort to collect from other parties.

There is no error.

In this opinion the other judges concurred.