THE STATE OF CONNECTICUT *v.* JOHN J. MURPHY
ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued June 16th—decided July 15th, 1938.

*John A. Danaher* for the appellant (defendant Murphy).

*Hugh M. Alcorn,* State's Attorney, with whom was *Hugh Meade Alcorn, Jr.,* and, on the brief, *Harold E. Mitchell,* Assistant State's Attorneys, for the appellee (the State).

BROWN, J. The information in the first count, upon which the defendant Murphy was convicted, charges that he and the fifteen other defendants, all members of a truck drivers' labor union of which he was the

treasurer-secretary and business agent, conspired together to violate § 6194 of the General Statutes against breach of the peace and § 6208 against intimidation, and for the purpose of preventing by threats and intimidation the use of the highways by trucks operated by others than those belonging to the union, feloniously conspired to compel truck owners against their will to employ only union drivers and non-union drivers against their will to join the union, or abstain from driving trucks upon the highways; and to accomplish this purpose persistently followed numerous motor trucks in a disorderly manner in motor vehicles, with intent to intimidate and injure the owners and operators and their property. The information goes on to enumerate in detail twelve different incidents involving trucks, their drivers and owners, upon highways in Hartford and vicinity during the period from Septemper 11th to 27th, 1937, alleged to have transpired in pursuance of the conspiracy. Typical of the conduct of the defendants described therein are such acts as: forcibly stopping and diverting trucks miles from their course; detaining them for hours or even days; then compelling drivers and owners to accede to unionization demands as the condition of their trucks' release; damaging truck mechanisms; detaining drivers against their will; making threats and using intimidation to compel owners to employ only union labor, and drivers to join the union; carrying drivers away from and forcing them to abandon their trucks; following trucks persistently in a disorderly manner in motor vehicles fueled at the expense of the union; threatening injury to the trucks to intimidate the owners and drivers and make them abstain from operating; stoning and damaging delivery trucks and threatening and intimidating their drivers to compel them and the owners to abstain from operating; and

beating and injuring and threatening and intimidating a delivery truck driver with similar purpose.

The trial court has found that the State offered evidence to prove and claimed to have proved that all of the defendants were members of the union, that all were on strike and actively interested in making it fully effective, that those of them other than the defendant Murphy to whose conduct in this regard we refer below, were actively engaged in picket duty, that in the course thereof these defendants actually participated in one or more of the twelve incidents alleged in the information, each of which in itself constituted unlawful conduct on the part of the participants, and that they had with criminal intent agreed together to perpetrate these unlawful acts to accomplish their purpose.

The claim of the defendant Murphy, hereinafter referred to as the accused, however, is that even though all this be true as to the other defendants, there was no sufficient evidence upon which the jury could reasonably have found that he actually participated in any of these twelve picketing occurrences or engaged in active picketing at any time, and that there being no direct evidence of his agreeing to such conduct, the case against him is one of "inference upon inference, without basis in fact either as to guilty knowledge or criminal participation," and that by reason of this the evidence cannot support the verdict of guilty against him. His contention upon appeal, as it was at the trial, is that by virtue of his position as an officer of the union properly discharging his official duty to it, he was a party to no illegal activity, but stands rather as an innocent victim of circumstances because of unlawful acts by others, for which he is in no way responsible.

Among other facts which the trial court has found

that the State offered evidence to prove and claimed to have proved are these: that as treasurer he had complete control of the union's funds and could have refused to make disbursements to the pickets for gas and oil, but in fact continued such payments throughout the period of the strike in the total amount of $1454.76; that shortly after the arrest of two of the other defendants for beating a nonunion driver during one of the twelve episodes alleged, he provided cash bail for them from money he had previously drawn from the union's account at the bank in anticipation of the arrest of union men, and later fearing further arrests drew $500 more for the same purpose which was on his person when he himself was apprehended; that he told Detective Hickey that he knew two of the trucks diverted by the union pickets and detained at the union headquarters for seven days, were being held; that one of the other defendants told Hickey that on September 25th, 1937, the defendant said to him, "What the hell's the matter with you, why aren't you chasing those Fox trucks?"; and that the defendant also told Hickey when arrested that he could "settle the strike in ten minutes" if released.

Whether this was sufficient to afford a basis in fact as to his guilty knowledge and participation, we need not inquire, for it was supplemented by the following among other facts which the State offered evidence to prove and claimed to have proved of his actual participation: that he was actually present during the picketing near Fox's warehouse twice during the forenoon and again talking to one of the other defendants in the afternoon of September 25th, 1937, on the morning of which day one of the twelve episodes occurred; that he was also present on Maple Avenue in Hartford for some fifteen minutes shortly after midnight on one of the earlier days of the strike where he con-

ferred with groups from a large crowd of pickets who were engaged in stopping trucks, and that when later questioned as to the lawfulness of his activities on that occasion, he replied: "Well, you have got me there"; and that on the night of September 14th, 1937, when two trucks stopped by the pickets had been diverted to union headquarters and the drivers brought there and forced to join the union, its secretary asked the accused whether the trucks might proceed, who, upon learning that they belonged to Greer Brothers, exclaimed, "we have been laying for Greer for a long time" and the trucks "won't move out of here tonight unless Greer signs up," which Greer subsequently did against his will after being told of this by the accused over the telephone, this being another of the twelve episodes. Furthermore he alone of all the defendants failed to take the witness stand.

We have not before us a printed transcript of the evidence. Section 5692 of the General Statutes requires that upon an appeal from the denial of a motion to set a verdict aside the evidence shall be printed at the expense of the appellant. An examination of the claims of proof of the parties, the charge of the trial court and the briefs of counsel, satisfy us that this is not a case in which we should, if we ever ought to, waive compliance with the requirement that the evidence be printed to present such a ruling for review. The denial of the motion to set the verdict aside is not before us for consideration.

The accused in his brief claims three particulars in which he was entitled to have the information made more specific under his motions for a bill of particulars, the denial of which is the first error assigned on his appeal from the judgment. The first, relating to the names of trucking concerns alleged to have been conspired against, falls strictly within our ruling in

*State* v. *Pallotti*, 119 Conn. 70, 73, 174 Atl. 74, where the defendant's motion for a specific allegation of the names of officials and voters conspired against was held properly denied. Supreme Court Records and Briefs, Vol. A-60, page 6. The second, as to what defendants were the participants in the overt acts alleged, and the third as to whether defendants were those who did them, were also properly denied. What we said in the *Pallotti* case is equally true here, the information "stated the circumstances of the offense with considerable particularity; nor does it at all appear that it failed to inform the accused of the 'nature and cause of the accusation'; Constitution of Connecticut, Article First, § 9; or give him sufficient information to enable him to prepare his defense. The accused was not entitled to the bill of particulars requested as a matter of right. . . . the record fails wholly to disclose that any harm could have come to the accused from the denial." The court did not err in denying the motions in the exercise of its discretion. *Dombroski* v. *Abrams*, 116 Conn. 454, 455, 165 Atl. 457; *Prince* v. *Takash*, 75 Conn. 616, 619, 54 Atl. 1003.

The second error assigned is the court's overruling of the accused's demurrer to the information. As the trial court correctly observed in its memorandum overruling the demurrer, it is "largely concerned in attacking various separate portions of the information. The information as a whole is good against demurrer." Upon appeal the accused predicates his contention that this ruling of the court was erroneous, mainly upon the theory that the information is defective in law because it does not accuse the defendants in the language of any statute defining conspiracy as an offense under the law of this State, and that there is no such statute defining conspiracy as an offense under the law of Connecticut. This court, however, has repeatedly

held that conspiracy is a common-law crime and punishable as such under the statutes relating to the punishment of high crimes and misdemeanors, the present act being § 870d of the 1937 Supplement to the General Statutes. *Fimara* v. *Garner,* 86 Conn. 434, 438, 85 Atl. 670; *State* v. *Stockford,* 77 Conn. 227, 237, 58 Atl. 769. As is suggested in the State's brief, the information in the present case follows closely that in the *Stockford* case, and as the case was developed it fell very nearly within the pattern of that case. The information sufficiently alleged the crime of conspiracy as defined by the decisions of this court. There is nothing in the National Labor Relations Act, Title 29, U. S. C., §§ 106 and 157, referred to in the accused's brief, which affects the question. The court did not err in overruling the demurrer.

One of the thirty-seven assignments of error as to the court's charge is its refusal to charge as requested to the effect that when any circumstance offered in evidence is susceptible to two inferences, one of which is in favor of guilt and the other of innocence, it must be disregarded and cannot be taken into consideration by the jury in reaching its conclusion. Such a rule would virtually eliminate circumstantial evidence as a means of proof. Whatever authority there may be in support of it in the federal courts in cases of conspiracy to violate federal statutes, as indicated by the dictum in *Dickerson* v. *United States,* 18 Fed. (2d) 887, 893, relied upon by the accused, it has no place in the law of this State where the jury are entitled to draw all fair and reasonable inferences from the facts and circumstances which they find established by the evidence. It is not the generally accepted rule. *Frick* v. *State,* 177 Ark. 404, 409, 6 S. W. (2d) 514; *Jamison* v. *People,* 145 Ill. 357, 380, 34 N.E. 486, 492; *Hinshaw* v. *State,* 147 Ind. 334, 379, 47 N. E. 158, 172; 5 Wig-

more Evidence (2d Ed.) § 2497, p. 470; 2 Chamber-layne, Evidence, § 996d.

One error assigned in the charge as given relates to the words: "What is the crime with which this combination is charged with committing? Why, the crime of violating those two sections of our statutes known generally as the intimidation statute and the breach of the peace statute." The accused claims that thereby the court in effect charged that the union constituted a combination, and confined the jury's consideration to the question of a violation of the intimidation statute, rather than of conspiring to perpetrate acts of intimidation. The court's words quoted, however, had been preceded by its express statement that the charge was of conspiring to violate the statute and by its definition of conspiracy as a combination of two or more persons to commit some crime. Then by the words complained of it was proceeding to explain the final element, that the combination was to commit the crime of intimidation. It continued that such a combination is criminal, and that the information charged a violation of the statute which the court then quoted. Construed in its context the court did not err in using the words quoted.

The court further charged that " 'In the furtherance of a lawful strike the strikers may use peaceful persuasion to induce other workmen to join them in the strike. The boundary between lawful and unlawful conduct is that between peaceful persuasion and intimidation.' Now, in one sentence could there be a more perfect indication of what you may come to find will be one of the principal issues in this case?" The accused contends that the words quoted and accompanying this portion of the charge failed to sufficiently instruct the jury as to the difference between intimidation and conspiracy. In this connection, how-

ever, the court fully explained that the information charged conspiracy; what constituted conspiracy; what the crime was which the defendants were charged with committing, as a combination in conspiracy; that a combination to intimidate is criminal; what constitutes intimidation; that while the defendants could in picketing lawfully use peaceful persuasion, they could not lawfully resort to intimidation, and that it might become the jury's problem to determine which of these their conduct constituted, since the State claimed it involved intimidation, whereas the defendants claimed the contrary. Upon this issue the court's words quoted were not only legally correct and sufficient, but most appropriate, and taken in connection with the court's later statement that the defendants were guilty of conspiracy or nothing, are clearly not subject to the criticism urged by the accused.

In referring to the nature of the evidence offered by the State to prove the conspiracy, the court charged, quoting from *State* v. *Spalding*, 19 Conn. 233, 237, that "The proof of this [conspiracy] is not often made by direct, open and positive evidence; but more generally and more naturally by proving a repetition of acts of a character conducing to show a mutual purpose. In such a case, it is seldom true that any one act, taken by itself, can be detected as tending to prove a combination; but when it is seen in connection with other acts, its true nature may be discovered. And so, as this species of proof is multiplied, a strong case of unlawful conspiracy is often established." The accused claims that while this rule was applicable in the case cited where the acts in question were committed by the same individuals, it has no application to the present case where the acts were committed by different individuals. No authority is cited in support

of this contention and we know of none. So far as appears the evidence had been introduced without objection and was properly before the jury within the above rule as showing acts conducing or tending to disclose a mutual purpose. Such acts constitute relevant evidence of at least potential probative value, though the weight to be given it is for the jury to determine. The court quoted these words in explanation of the nature of the evidence and properly left to the jury the question of the value to be given it.

In the course of the charge the court reiterated the definition and explanation of the crime of conspiracy, and the accused complains because in one instance, where it stated the two elements involved to be wrongful combination and criminal intent, it failed to mention that proof of knowledge of the agreement or existence of the conspiracy upon the part of the defendant was essential to guilt. This well illustrates the nature of a number of his criticisms of the court's charge. In other parts of the charge it had amply and repeatedly covered this essential. Thus, in one place it stated that where parties charged "acted under a misconception or in ignorance, without any criminal motive . . . the crime of conspiracy would not have been established and the defendants would be entitled to an acquittal," and, in another, "if these defendants had no knowledge of any unlawful act or conspiracy or no intent to commit an unlawful act or to combine in a conspiracy, their actions do not make up the offense of conspiracy." The passage complained of, could in no sense have been prejudicial to the rights of the accused.

He further complains that the court erred in failing to charge explicity that if those defendants charged under the second count with the burning of a truck, one of the twelve episodes related in the information,

were found not guilty, the jury should lay that charge out of consideration in so far as the same was a part of the first count. The accused filed no request for such a charge. While the court might properly have charged to this effect, the charge as a whole made clear to the jury that no incident alleged was of significance under the first count unless found upon the evidence to have been committed. The lack of the caution complained of by the accused could not have constituted prejudicial error.

Each of a number of those passages in the charge claimed by the accused to be erroneous, taken by itself was correct, and these call for no comment. A number of other passages claimed to be erroneous, one of which we have already discussed, when read in connection with the charge as a whole were adequate and correct. Further discussion of these is unnecessary. "We call attention to our oft repeated admonition that it is never permissible, or fair to the trial court, to detach such portions of a charge, incomplete in themselves, from their proper context, and present them as errors." *C. I. T. Corporation* v. *Deering,* 119 Conn. 347, 353, 176 Atl. 553. The charge is to be read as a whole and error cannot be predicated upon detached sentences or portions of it. *State* v. *Pecciulis,* 84 Conn. 152, 161, 79 Atl. 75. Following as it did a trial unusually prolonged and difficult by reason of the number of defendants and charges involved, the court's charge in this case was necessarily a long one. A study of it, however, leaves no doubt that it was most carefully prepared, logically arranged, and clearly expressed. It contained a correct and accurate statement of the law applicable to the rather complicated facts in issue, so reiterated as to afford a practical and readily understandable guide to the jury. It gave a fair and unbiased summary of the conflicting claims of

the State and the defense, and concisely submitted the issues so raised to the jury for determination. In short, it fully met the requirements of our law that the court in charging the jury in a criminal case shall "give to them such instructions as may be required to enable them to understand the nature of the offense charged and the questions which they are to decide, to weigh the evidence applicable to such questions, and to intelligently decide them." *State* v. *Long,* 72 Conn. 39, 43, 43 Atl. 493. There was no error in the court's charge to the jury.

The court's denial of the accused's motion for an acquittal at the close of the State's case, and for a directed verdict of acquittal at the close of the evidence, assigned as error, do not constitute proper grounds of appeal. *State* v. *Boucher,* 119 Conn. 436, 437, 177 Atl. 383; *State* v. *Fasano,* 119 Conn. 455, 459, 177 Atl. 376.

The errors assigned incident to the claimed correction of the court's finding as to what transpired at the trial, relating to the claim that the court erred in denying the accused's motion for a mistrial because of improper remarks by the state's attorney during his argument, cannot avail the defendant. There being no official record by the court stenographer of the state's attorney's argument or of the remarks in question, and no proceedings taken to rectify the appeal, the court's finding of what transpired, in the absence of a mistake therein apparent upon the record itself, is conclusive. The claimed errors in this regard afford no ground of appeal.

The court's finding shows that in answer to arguments of counsel for the defendants, attacking the credibility of County Detective Edward J. Hickey, the state's attorney in his argument stated generally that Mr. Hickey had never been known to tell a jury in

Hartford County a lie, and further that he did not believe Mr. Hickey ever told a jury an untruth, and that he was a truthful witness and had never told him (Mr. Alcorn) a lie. These remarks, made though they were in the heat of argument and under the strain of an unusually long trial, were improper. Counsel for the defendant should have objected at the time. In response to the defendant's motion, the court subsequently expressly cautioned the jury to "utterly disregard" these remarks "as having nothing to do with this case and no effect upon the issues here." This was the usual and approved method of obviating potential prejudice to a party by such a circumstance. *Archambeault* v. *Jamelle,* 100 Conn. 690, 694, 124 Atl. 820; *State* v. *Stefanosky,* 106 Conn. 260, 262, 137 Atl. 762. It was not adopted in *State* v. *Ferrone,* 96 Conn. 160, 168, 113 Atl. 452, and *State* v. *Santello,* 120 Conn. 486, 181 Atl. 335, the two cases relied upon by the accused. As we said in *Lebas* v. *Patriotic Assurance Co.,* 106 Conn. 119, 122, 137 Atl. 241, the trial judge has the "'means of discerning the wiser course [of dealing with such improper conduct], which cannot well be spread upon a record,' and he has a large discretion in that regard. 'We should hesitate in any case to review his decision without strong reason.' *Cunningham* v. *Fairhaven & W. R. Co.,* 72 Conn. 244, 252, 43 Atl. 1047." Upon this record we cannot say that the trial court's denial of the motion constituted an abuse of discretion.

There is no error.

In this opinion the other judges concurred.