## STATE OF CONNECTICUT *v.* RICHARD A. DAVID

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 4-0958

Argued April 6—decided September 14, 1962 [1]

*Peter Marcuse,* of Waterbury, for the appellant (defendant).

[1] Publication of this decision was determined upon after an appeal to the Supreme Court of Errors was withdrawn.

*Raymond J. Quinn, Jr.,* assistant prosecuting attorney, with whom, on the brief, was *T. Gordon Hutchinson,* prosecuting attorney, for the appellee (state).

PRUYN, J. In a trial to the jury the defendant was found guilty of the crimes of breach of the peace, in violation of § 53-174 of the General Statutes, and resisting arrest, in violation of § 53-165, and has appealed. The first assignment of error relates to the denial of the defendant's motion for challenge to the array and for dismissal of the jury panel. The defendant, a Negro, claims that the method of selection of jurors prescribed by the statutes of the state of Connecticut and used by the clerk of the Circuit Court in the fourth circuit in the case at bar discriminates against Negroes, specifically asserting that §§ 51-217, 51-220 and 51-226 of the General Statutes violate both the Connecticut and United States constitutions.

In respect to the motion for challenge to the array, the trial court found the following facts: According to the 1960 United States census, the following are the figures for the towns which comprise the fourth circuit and the counties from which come the jurors for the fourth circuit, as to total population and Negro population:

| | Total Population | Negro Population |
|---|---|---|
| Wolcott | 8,889 | 13 |
| Naugatuck | 19,511 | 49 |
| Middlebury | 4,785 | 13 |
| Prospect | 4,367 | 26 |
| Woodbury | 3,910 | 10 |
| Watertown | 14,837 | 96 |
| Totals excluding Waterbury | 56,299 | 207 |
| Waterbury | 107,130 | 7,090 |
| Totals for fourth circuit | 163,429 | 7,297 |

| | | |
|---|---|---|
| New Haven County | 660,315 | 35,194 |
| Litchfield County | 119,856 | 946 |

The clerk of the Circuit Court in the fourth circuit had on two occasions drawn names from the jury array for service on the criminal jury panel for that court. In each case, the drawings were made from names segregated by town. On the first panel, thirteen jurors were drawn from Waterbury and four from each of the other towns in the circuit. On the panel from which the jury was chosen for the instant case, seventeen jurors were drawn from Waterbury and five from each of the other six towns. There were actually available for service in the case at bar thirteen residents of Waterbury, three of Wolcott, five of Naugatuck, three of Middlebury, five of Prospect, four of Woodbury and two of Watertown. No Negro served as a member of either of the two panels. The defendant is a Negro. Lists of jurors on the fourth circuit panels since the inception of the Circuit Court have been received from the clerk of the Superior Court in New Haven for the towns in the fourth circuit in New Haven County and from the clerk of the Superior Court in Litchfield for the towns in the circuit in Litchfield County. The clerk of the fourth circuit of the Circuit Court has nothing to do with the actual selection of names on the jurors' lists. No evidence was produced and no claim made of deliberate exclusion or discrimination on the part of the court, any jury commissioner or any members of the jury committee. The jury lists do not disclose the racial background of any of the persons listed thereon.

The right of trial by jury is guaranteed by the United States constitution and the constitutions of all the states. Since the days of the Magna Carta, trial by jury has been one of the foundation stones of the common law as a protection against tyran-

nical power. To preserve this right, the proper constitution of juries is extremely important. The United States constitution in article III, § 2, provides: "The trial of all Crimes, except in Cases of Impeachment, shall be by Jury." This provision was quickly supplemented by the sixth amendment, which provides that the jury must be impartial. And our state constitution provides that the right of trial by jury "shall remain inviolate"; art. I § 21; and that the accused shall have the right to "a speedy, public trial by an impartial jury." Art. I § 9. Under the fourteenth amendment to the United States constitution, states are forbidden to make or enforce any law which abridges privileges or immunities of citizens, to deprive any person of life, liberty, or property without due process of law or to deny to any person the equal protection of the laws. In respect to jury service, Congress has made the fourteenth amendment applicable to juries in state courts by providing that "[n]o citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude." 18 U.S.C. § 243.

These constitutional provisions have long been interpreted by both state and federal courts as requiring the jury to be representative of the community. "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." *Smith* v. *Texas,* 311 U.S. 128, 130. "Fundamental to the integrity of our system of trial by jury is the principle that the jury must be a body impartially selected from a cross section of the community." *State* v. *Ferraro,* 146 Conn. 59, 61. This does not mean, however, that every individual in the community is eligible to serve as a juror. It

is obvious that there must be some qualifications established for jurors in order to obtain impartial and competent juries of one's peers. This is recognized in the provisions of the section of the United States Code quoted above and by the courts. Such qualifications are constitutionally valid so long as they reasonably reflect a cross section of the community suitable in character and intelligence for the civic duty of jury service. *Brown* v. *Allen,* 344 U.S. 443, 471; *United States* v. *Romano,* 191 F. Sup. 772, 774, 775. Juries may be confined "to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications"; *Strauder* v. *West Virginia,* 100 U.S. 303, 310; to property owners and voters between the ages of twenty-one and fifty; *Brown* v. *Allen,* supra; or to persons who are able to read and write and to understand a section of the constitution. *Williams* v. *Mississippi,* 170 U.S. 213. Section 51-217 of our General Statutes provides: "All jurors shall be electors not less than twenty-five years of age, esteemed in their community as persons of good character, approved integrity, sound judgment and fair education, and with no permanent disability impairing their capacity to serve as jurors." It would seem perfectly clear that these qualifications reasonably reflect a cross section of the community and were designed to produce jurors of the character and intelligence necessary for the performance of jury service.

Under our jury system, jurors are chosen by towns and the number for each town is based on a sliding scale depending upon population. § 51-220. In each town there is a jury committee of three electors whose duty it is to furnish for the use of the jury commissioners of the county annually a list containing twice the number of names required by § 51-220 of persons who possess the qualifications

specified in § 51-217. § 51-221. The jury commissioners of each county investigate the qualifications of the persons whose names appear on the lists of the various towns and prepare a final list of the specified number for each town and file it with the clerk of the Superior Court. § 51-223. That clerk is required to prepare slips on which names of the jurors of each town in the county are entered and place the slips in boxes according to the respective towns. § 51-226. The clerk of the Superior Court transmits to the clerk of each Circuit Court within the county a list of the jurors for the towns of the county within each such circuit; the circuit clerk then prepares slips of the names and places them in the jury box for drawing under direction of the judge. § 51-227a.

Under our statutes the list of electors, the voting list, in each town forms the basis from which the list of jurors is made. Section 9-20 of the General Statutes prescribes the information which every person who desires to become a voter must present to the board for admission of electors. There is nothing contained therein or elsewhere in the statutes in regard to specifying the race of such applicant. The trial court found that the jury lists do not disclose the race of the persons listed thereon.

The statutes do not exclude, nor authorize any of the officials concerned with the selection of jurors to exclude, any person or class of persons because of race, and the defendant does not claim that any of the officials concerned discriminated intentionally against Negroes. What the defendant does claim is that the operation of the jury system in selecting jurors by towns in and of itself discriminates against Negroes, arguing that an analysis of the population figures contained in the court's finding indicates that the mathematical possibility of selecting a Negro

for jury service in a panel of which seventeen persons are selected from Waterbury and thirty from the surrounding six towns is less than one-third of the possibility if the panel were chosen at random from Waterbury and less than one-half of the possibility if the panel were chosen at random from the entire circuit. The mathematical conclusions which the defendant attempts to draw, however, are based neither on random selection nor on the law of averages. It does not necessarily follow that if a given number of prospective jurors were selected on the theory proposed by the defendant the percentage of the minority would be reflected in the number actually selected. It is obvious that juries cannot be selected on the basis of average calculations; too many variables enter into the selection; they must be selected by chance.

It is well settled that underrepresentation of a racial group on juries is not violative of any constitutional requirements. *Akins* v. *Texas,* 325 U.S. 398. In that case, the court said (p. 403): "Fairness in selection has never been held to require proportional representation of races upon a jury." And in *Cassell* v. *Texas,* 339 U.S. 282, 286, 287, the court said: "We have recently written why proportional representation of races on a jury is not a constitutional requisite. Succinctly stated, our reason was that the Constitution requires only a fair jury selected without regard to race. Obviously the number of races and nationalities appearing in the ancestry of our citizens would make it impossible to meet a requirement of proportional representation. Similarly, since there can be no exclusion of Negroes as a race and no discrimination because of color, proportional limitation is not permissible. . . . An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion

nor exclusion because of race." It should be noted in passing that the statistics contained in the finding relate to population figures; there is no finding nor any evidence whatsoever as to how many, if any, Negroes were on the voting lists and thus eligible for jury service. In the selection of the jury panel in the instant case, there never was any question of race.

The presiding judge is vested with considerable discretion in the matter of the drawing of the panel. He may exclude jurors from the town where the crime was committed, to avoid local prejudice. *State* v. *Rosa*, 87 Conn. 585, 593. Where the panel is liable to be exhausted, he may exclude jurors from a large town where additional jurors could be more readily obtained. *State* v. *Chapman*, 103 Conn. 453, 472. The selection of the jury panel on the basis of a distribution among the towns of the circuit results in a panel that is truly a "cross section of the community." The defendant's motion for challenge to the array and for dismissal of the jury panel was properly denied.

The next two assignments of error are based on the denial of the defendant's motions, at the close of the state's case, to dismiss the two charges. Such a denial is not a proper ground of appeal and we therefore do not consider it. *State* v. *Murphy*, 124 Conn. 554, 567; *State* v. *Boucher*, 119 Conn. 436, 437.

The next four assignments of error relate to procedural matters. Although expressly not abandoned, they were not pressed either in the defendant's brief or in argument. In essence they amount to a wholesale attack on the finding. The trial court's denial of the motion to correct the finding was proper. *Osuch* v. *Osuch*, 146 Conn. 90, 91.

The defendant finally assigns error in the portion of the charge to the jury on resisting arrest. The

court correctly charged the jury as to the elements of the crime of resisting arrest. The defendant excepted to the charge in that it did not contain, as requested by him, instructions in regard to the propriety of the actions of the police officer and the law of unlawful arrest and resistance thereto. The jury could reasonably have found from the conflicting evidence the following facts: The police officer, engaged in the investigation of an automobile accident, asked the defendant to go to the police cruiser for interrogation, gently placing his hand on his back. The defendant asked the reason for going to the cruiser and was told that it was routine procedure. He started to walk to the cruiser alongside the officer and about halfway stopped and told the officer that he was not going with him, calling him a vile name. The defendant then was arrested, because of the profane remark, for a breach of the peace committed in the presence of the officer. The defendant then threw a punch at the officer, knocking off his hat, and the two struggled. The court committed no error in refusing to charge as the defendant requested.

There is no error.

In this opinion KOSICKI and DEARINGTON, Js., concurred.