STATE OF CONNECTICUT *v.* PAULINO DUMLAO

STATE OF CONNECTICUT *v.* AURORA DUMLAO

(2884)

(2954)

HULL, BORDEN and SPALLONE, Js.

Argued January 18—decision released April 30, 1985

*Gilbert Shasha,* for the appellant (defendant Paulino Dumlao).

*Richard Singer,* public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant Aurora Dumlao).

*Irving L. Aronson,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee (state).

BORDEN, J. The defendants, Paulino and Aurora Dumlao, were charged with the crimes of assault in the first degree in violation of General Statutes § 53a-59 (a) (3)[1] and injury or risk of injury to a child in violation of General Statutes § 53-21,[2] and were tried together. The jury found each of them not guilty of the charge of assault but convicted them each of injury or risk of injury to a child. The defendants appeal separately from their convictions, claiming in large part that the court erred in admitting certain evidence and that the evidence was insufficient for conviction. We find no error.

The jury could reasonably have found the following facts: On March 7, 1983, the defendants' two year old daughter was hospitalized at Yale-New Haven Hospital after being transferred from the Naval Hospital in Groton where she was referred by a local pediatrician. The child, at the time the defendants took her to the pediatrician and she was hospitalized, was in pain, generally unresponsive to her environment, covered with abrasions and bruises, including an open lesion the size of a nickel under the left eye, severely dehydrated, and had internal abdominal injuries which were later diagnosed as a fractured spleen, pancreatitis and liver dys-

[1] General Statutes § 53a-59 (a) (3) provides: "A person is guilty of assault in the first degree when: . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[2] General Statutes § 53-21 provides in pertinent part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured . . . or does any act likely to impair the health . . . of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

function. The child's overall symptoms were properly diagnosed as battered child syndrome. Because her injuries were life-threatening, she was placed in intensive care. She had to be fed intravenously for two weeks. The medical history given by the defendant Paulino to the doctors was inconsistent with the child's injuries. The injuries occurred within approximately seven days prior to the child's arrival at the hospital.

The trial court granted the defendants' motion in limine in part, barring any reference in the evidence to the terms "battered" or "abused child," but permitting the use of the term "battered child syndrome." The court denied the defendants' motions for judgment of acquittal, made at the close of the state's case and when the defendant Paulino had rested,[3] on the basis that the state had made out prima facie cases which should be submitted to the jury.

## I

### APPEAL OF THE DEFENDANT PAULINO DUMLAO

### A

We first address the claims of the defendant Paulino Dumlao, beginning with his argument that the court improperly admitted expert testimony on the issue of the battered child syndrome. The defendant argues that such testimony was inflammatory, implying misconduct by the defendants, and was an opinion on the ultimate issue of the case, effectively depriving the jury of their function to determine guilt or innocence. We disagree.

Expert testimony is permitted, in the court's discretion, " 'if the witness has a special skill or knowledge, beyond the ken of the average juror, that, as properly

---

[3] The defendant Aurora presented no evidence. The defendant Paulino presented evidence to attempt to establish an alibi defense, showing he was at work during much of the time period in which the injuries were claimed to be inflicted.

applied, would be helpful to the determination of an ultimate issue.' " *State* v. *Esposito,* 192 Conn. 166, 175, 471 A.2d 949 (1984). Battered child syndrome has become a well established medical diagnosis. *Commonwealth* v. *Labbe,* 6 Mass. App. 73, 77, 373 N.E.2d 227 (1978); *State* v. *Tanner,* 675 P.2d 539, 542–43 (Utah 1983); see *State* v. *Tucker,* 181 Conn. 406, 411, 435 A.2d 986 (1980). Expert medical testimony that a child suffered from battered child syndrome has consistently been held admissible in other jurisdictions. See, e.g., *United States* v. *Bowers,* 660 F.2d 527 (5th Cir. 1981); *Bell* v. *State,* 435 So. 2d 772 (Ala. Crim. App. 1983); *People* v. *Jackson,* 18 Cal. App. 3d 504, 95 Cal. Rptr. 919 (1971); *Commonwealth* v. *Labbe,* supra; *State* v. *Goblirsch,* 309 Minn. 401, 246 N.W.2d 12 (1976); *State* v. *Wilkerson,* 295 N.C. 559, 247 S.E.2d 905 (1978); *State* v. *Tanner,* supra, 543; annot., 98 A.L.R.3d 306.

"[T]he 'battered child syndrome' simply indicates that a child found with [certain types of injuries] has not suffered those injuries by accidental means. This conclusion is based upon an extensive study of the subject by medical science." *People* v. *Jackson,* supra, 507; *State* v. *Wilkerson,* supra; *State* v. *Tanner,* supra. A diagnosis of battered child syndrome is often indicated when a child's injuries do not jibe with the history given by the parent. See *State* v. *Tanner,* supra, 542; McCoid, "The Battered Child and Other Assaults Upon the Family: Part One," 50 Minn. L. Rev. 1, 18–19 (1965). A properly qualified expert medical witness, therefore, may appropriately explain the syndrome to the jury and express his opinion that the victim suffers from it. Cf. *People* v. *Reid,* 123 Misc. 2d 1084, 475 N.Y.S.2d 741 (1984). We agree with the Utah Supreme Court that "trial courts [must] weigh carefully the probative value against the potential for undue prejudice that may be created by the use of the term 'battered child syndrome.' The term should not be applied broadly or as

a generalization. The expert should be able to testify in detail regarding the nature of the child's injuries and whether the explanation given for the injuries is reasonable. Any deficiencies in the testimony, however, go to its weight rather than to its admissibility. The weight and credibility to be given an expert's testimony are matters to be decided by the factfinder. Defense counsel may of course challenge the testimony on cross-examination, but such challenge goes to the weight to be given the testimony, not to its admissibility. *See State* v. *Clayton,* Utah, 646 P.2d 723, 726 (1982)." *State* v. *Tanner,* supra, 543–44.

The expert witness should not be permitted to testify whether "the battered child syndrome from which this victim suffered was in fact caused by any particular person or class of persons engaging in any particular activity or class of activities"; *State* v. *Wilkerson,* supra, 570; the purpose of this kind of testimony is "not accusatory" and has no bearing on the defendant's culpability. *State* v. *Tanner,* supra, 542. On the other hand, evidence of battered child syndrome, coupled with other proof, such as a continuing opportunity to inflict the injuries, may permit an inference not only that the injuries were not accidental but also that they were incurred by one who regularly cares for the child. *People* v. *Jackson,* supra; *State* v. *Tanner,* supra, 542 n.2; see also *United States* v. *Bowers,* supra; *People* v. *Henson,* 33 N.Y.2d 63, 74, 304 N.E.2d 358, 349 N.Y.S.2d 665 (1973).

William Hellenbrand, a physician at Yale-New Haven Hospital, testified in detail about the child's injuries. He stated that battered child syndrome is an accepted medical term that is diagnosed "when a child suffers an injury or injuries . . . because of physical trauma done to the child by another individual." He testified that his examination of the child, indicating inflammation of the pancreas, a fractured spleen, damage to the

liver, hematoma or collection of blood within the abdomen, and multiple bruises, fit within the classic description of battered child syndrome.[4] He further testified that the explanation given by the parents' medical history did not adequately explain the severity of the injuries.

Hellenbrand's testimony was within his field of expertise and linked the child's injuries to the diagnosis of battered child syndrome. It was not a broad discussion of battered children or child abuse, and no accusations of who might have caused the injuries were made by him or any of the other doctors who testified. The court carefully excluded the use of inflammatory terms such as "child abuse" or "abused child," and properly permitted the presentation of battered child syndrome solely as a medical diagnosis. Such testimony, like other medical testimony, is of obvious aid to the jury in its determination of the ultimate issue of guilt or innocence of the defendant. *State* v. *Esposito,* supra. If used appropriately, as it was in this case, it is not inflammatory and does not invade the province of the jury to determine guilt or innocence.

## B

The defendant's next argument involves the sufficiency of the evidence to convict him. Included in this argument is the claim that his conviction was improperly based on circumstantial evidence. This claim is without merit. "[Triers of fact] necessarily rely upon circumstantial evidence and are entitled to draw reasonable and logical inferences from all the facts. 'There is no distinction between direct and circumstantial evidence as far as probative force is concerned.' *State* v.

---

[4] Richard M. Manjerovic, a physician at the Naval Hospital in Groton at the time the child was seen there, also testified that, after examination, he diagnosed the child's injuries as being a result of battered child syndrome. This diagnosis was not explained to the jury at that time but Manjerovic was permitted to testify in detail about the child's injuries.

*Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981)." *Monroe* v. *Crandall,* 3 Conn. App. 214, 220, 486 A.2d 657 (1985). Circumstantial evidence may be used, therefore, to establish the elements of the crimes charged. *State* v. *Bember,* 183 Conn. 394, 397, 439 A.2d 387 (1981). The jury may make reasonable, logical inferences from the evidence. Id.

We therefore turn to the challenge to the sufficiency of the evidence. When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, this court reviews whether "[t]he jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." *State* v. *Giorgio,* 2 Conn. App. 204, 211, 477 A.2d 134 (1984). In ruling on such a motion, the evidence presented at the trial " 'must be given a construction most favorable to sustaining the jury's verdict.' " *State* v. *Failla,* 1 Conn. App. 524, 527, 473 A.2d 1233 (1984).

The jury was presented with the following facts: The defendants' child was taken to a local pediatrician, required hospitalization, and was transferred to the Naval Hospital and then to Yale-New Haven Hospital. The doctors who examined her found she was significantly dehydrated, had suffered severe internal, life-threatening injuries, and had multiple abrasions and bruises all over her body. The history was given to the doctors by Paulino. He said that his wife, the co-defendant, had told him that the child's fifteen month old brother had hit the child with a toy car causing the injuries. He also told the doctors the child had vomited three or four times in the past couple of days. The doctors found this medical history inconsistent with the child's injuries. The extent of the child's dehydration

was more severe than was normal for a child who had vomited three or four times. The bruises and scrapes on her body, some of which were from fingernails dug into her skin, occurred within approximately seven days prior to the child's hospitalization, some within the previous twenty-four hours. She was diagnosed as suffering from battered child syndrome. During a visit to the hospital, the defendant asked a nurse, who had told him that he and his wife could not be left alone with the child, "[a]re you afraid I will injure the child again?" The defendant Aurora made a statement to the police reiterating that the injuries were due to the child's younger brother hitting the child with a toy car, and stating that she never corrected her children by hitting them and that she never used a babysitter to take care of her children. The defendant Paulino was employed by the Navy, and elsewhere as a security guard and was at work a great deal of the time. He did not, however, work round-the-clock and could, from time to time, leave his job at the Naval Base during working hours.

The defendant argues that there are many possible understandings of what could have happened based on the state's evidence. Of those potential constructions, the jury could reasonably have found from the evidence presented that the defendant permitted the child to be abused or failed to take action in connection with abuse of the child, in violation of General Statutes § 53-21. This statute prohibits permitting a child to be placed in a situation likely to endanger its life or limb or likely to injure its health; a failure to act when one is under a duty to do so, thereby permitting such a dangerous situation to exist, may be sufficient to support a conviction under this statute. See footnote 2, supra; see, e.g., *State* v. *Adams,* 89 N.M. 737, 557 P.2d 586 (1976); *Cowley* v. *People,* 83 N.Y. 464, 473–75 (1881); see also annot., 1 A.L.R.4th 38, 99–100.

The medical testimony indicated that the child's injuries were life-threatening. She had serious internal injuries and was covered with abrasions and bruises, including nail marks; the injuries had been inflicted over a period of one week; and the child was in pain, severely dehydrated, and generally unresponsive, at times being unable to focus. The evidence supplied by this defendant showed that he worked two jobs and was absent from the home much of the time. It did not, however, indicate where the defendant was when he was not at work, and it did show that he was sometimes at home when he was supposed to be at work. For as long as twelve to sixteen hours on some days during the week the injuries were claimed to be inflicted, the defendant was available to have inflicted these injuries on the child himself or to observe the child's condition and act prudently to do something about it. Contrary to the defendant's contention, the extent of the child's injuries indicates that the child would have appeared to be obviously injured even to an untrained eye. *People* v. *Henson,* 33 N.Y.2d 63, 69, 304 N.E.2d 358, 349 N.Y.S.2d 657 (1973).

The defendant had a duty to provide for the well-being of his daughter, including supplying medical care. See *In re Juvenile Appeal (Docket No. 9489),* 183 Conn. 11, 15, 438 A.2d 801 (1981). Even if he did not know who or what produced the injuries, the jury could have found that the child was in a life-threatening situation and was in need of medical care, but that the defendant permitted her to remain in that situation. It is the province of the jury to resolve the facts and determine the credibility of testimony. See *State* v. *Bember,* supra, 398; *State* v. *Gaynor,* 182 Conn. 501, 504–505, 438 A.2d 749 (1980).

In this connection, the defendant claims that, because his question to the nurse, "Are you afraid I will injure the child again?"was susceptible of a construction con-

sistent with innocence, in determining the sufficiency of the evidence we must give it that construction.[5] We disagree.

The defendant's claim is a variation on a commonly misapplied theme. That theme is that, in instructing the jury on the state's burden of proof the court must charge that if any fact or piece of evidence is capable of two constructions, one consistent with innocence and one consistent with guilt, it must be given that construction consistent with innocence.

This theme, which is *not* a correct statement of our law, indicates confusion about the meaning of the principle, which *is* part of our law, that proof beyond a reasonable doubt " 'is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' " *State* v. *Morrill*, 193 Conn. 602, 610, 478 A.2d 994 (1984); *State* v. *Hall*, 165 Conn. 599, 603, 345 A.2d 17 (1973). The difference between the defendant's claim and the principle stated in *State* v. *Morrill*, supra, and *State* v. *Hall*, supra, is the difference between the jury's function in drawing inferences from specific facts or evidence and its function in coming to the ultimate conclusion as to guilt or innocence on the basis of all the evidence.

It is clear that, in viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and

---

[5] The defendant claims that his question was not an admission of his conduct toward the child in the past, but that he was merely inquiring into the nurse's state of mind, in effect asking: "Do *you* believe I have hit the child in the past and will do so again?"

logical. *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591 (1955).

The Supreme Court has on infrequent occasion referred in dictum to the claim advanced by the defendant here. See *State* v. *Martin,* 195 Conn. 166, 173, 487 A.2d 177 (1985); *State* v. *Moss,* 189 Conn. 364, 367–68, 456 A.2d 274 (1983); *State* v. *Maturo,* 188 Conn. 591, 598–99, 452 A.2d 642 (1982). When specifically addressing the issue, however, the court has made it clear that it rejects the claim, and that the "two constructions" rule applies, not to any particular fact or piece of evidence, but only to the jury's ultimate conclusion based on *all the evidence* including the inferences, adverse or favorable to the state or defendant, that it has drawn from that evidence.

In *State* v. *Murphy,* 124 Conn. 554, 562–63, 1 A.2d 274 (1938), the court rejected the defendant's claim that the trial court erred by "its refusal to charge as requested to the effect that when any circumstance offered in evidence is susceptible to two inferences, one of which is in favor of guilt and the other of innocence, it must be disregarded and cannot be taken into consideration by the jury in reaching its conclusion. Such a rule would virtually eliminate circumstantial evidence as a means of proof. Whatever authority there may be in support of it in the federal courts in cases of conspiracy to violate federal statutes, as indicated by the dictum in *Dickerson* v. *United States,* 18 Fed. (2d) 887, 893 [8th Cir. 1927], relied upon by the accused, it has no place in the law of this State where the jury are entitled to draw all fair and reasonable inferences from the facts and circumstances which they find established by the evidence. It is not the generally accepted rule. *Frick* v. *State,* 177 Ark. 404, 409, 6 S. W. (2d) 514 [1928]; *Jamison* v. *People,* 145 Ill. 357, 380, 34 N.E. 468, 492 [1893]; *Hinshaw* v. *State,* 147 Ind. 334, 379,

47 N.E. 158, 172 [1897]; 5 Wigmore Evidence (2d Ed.) § 2497, p. 470; 2 Chamberlayne, Evidence, § 996d.''

In *State* v. *Foord,* supra, 294, the court reiterated its position: "It is, of course, true, as the defendants maintain, that any *conclusion,* reasonably to be drawn from the evidence, which is consistent with the innocence of the accused must prevail. *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761 [1929]. *The same rule, however, does not apply to inferences.''* (Emphasis added.)

In *State* v. *Morrill,* supra, 610, the court reaffirmed the holdings of *State* v. *Murphy,* supra, and *State* v. *Foord,* supra: "We also reject the defendant's claim, which the trial court accepted, that the possibility that other alternative inferences could be drawn which might suggest guilt of a crime other than the specific crime charged in the information also required granting the motion to dismiss. 'It is, of course, true . . . that any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused must prevail. *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761 [1929].' *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591 (1955). This court pointed out in *Foord,* however, that the same rule does not apply to inferences. Referring to *State* v. *Murphy,* 124 Conn. 554, 562, 1 A.2d 274 (1938), the court in *Foord* pointed out that 'the claim was advanced that when any circumstance offered in evidence is susceptible to two inferences, one which is in favor of guilt and the other of innocence, the circumstance must be disregarded and cannot be taken into consideration by the trier in reaching its conclusion. We there said (p. 562): "Such a rule would virtually eliminate circumstantial evidence as a means of proof . . . [and] it has no place in the law of this State where the jury are entitled to draw all fair

and reasonable inferences from the facts and circumstances which they find established by the evidence." ' "

The Second Circuit Court of Appeals follows the same reasoning. "We likewise do not accept the view, stated in an opinion cited by appellant, that '[A]n inference may not properly be relied upon in support of an essential allegation if an opposite inference may be drawn with equal consistency from the circumstances in proof.' " *United States* v. *Taylor,* 464 F.2d 240, 244 (2d Cir. 1972).

This position is consistent with the well established rule that, in ruling on a motion for judgment of acquittal based on the sufficiency of the evidence, both the trial court and this court must view the evidence in a light most favorable to sustaining the verdict of guilty. *State* v. *Jacobowitz,* 194 Conn. 408, 415, 480 A.2d 557 (1984); *State* v. *Failla,* 1 Conn. App. 524, 527, 473 A.2d 1233 (1984). It would be inherently anomalous to apply that standard and, at the same time, assume that only inferences consistent with innocence must be drawn.

Indeed, this case vivifies the fatal flaw in the defendant's claim. The defendant's question to the nurse, "Are you afraid I will injure the child again?" supplied a ready and reasonable basis for an inference by the jury adverse to him. Simply because he suggests that he meant something else, a meaning not as damaging to him, supplies no basis to deprive the jury of performing its classic function of drawing inferences of intent. *State* v. *Giorgio,* 2 Conn. App. 204, 211, 477 A.2d 134 (1984). We see nothing in history, reason, policy or the concept of proof beyond a reasonable doubt to require the jury to put on such blinders.

Viewing the evidence in the light most favorable to sustaining the verdict, therefore, and recognizing that in a case relying on substantial circumstantial evidence,

it is "the cumulative impact of a multitude of facts" which establishes guilt; *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); see *State* v. *Martin,* 195 Conn. 166, 173, 487 A.2d 177 (1985); we conclude that the evidence was sufficient to support the verdict of guilty of injury or risk of injury to a child.

## C

The defendant next argues that the court erred in using an analogy when instructing the jurors on the use of inferences when analyzing circumstantial evidence.[6] " 'To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge. . . . The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict.' *State* v. *Reid,* 193

---

[6] The portion of the jury charge which the defendant challenges was as follows: "You may draw reasonable inferences from the established facts in this case or in these cases. The inference which you draw, however, must not be from a guess upon the evidence or surmise, but it must be from a fact which the evidence has established. Inferences that you may draw from these established facts must be logical and reasonable and well founded upon facts which have been proven in the trial of the case. I am going to give you a very simple illustration of a situation where an inference can be probably drawn. There is a cat enclosed in a room with only one door and in the middle of the room is a bowl of milk and only the cat is in the room. The door is locked and it is guarded by a person. One hour later the door is unlocked and the room is entered and the bowl of milk is emptied. You can infer from those facts, that the cat drank the milk or if you go to bed at night and you have a nice green lawn and you wake up in the morning and you see it covered with snow you can infer that it snowed during that evening. That is a logical inference from an established fact. . . .

"Now, if you must relate that to the illustration which I gave you, how more conclusive can it be than the cat drank the milk and if someone said, 'I saw the cat drink the milk,' the only way there were no other animals in the room nor other people in the room. Of course, in the passing upon the guilt of an accused person on the basis of circumstantial evidence, you must be satisfied beyond a reasonable doubt; first, that certain facts or circumstances existed, and second; that the existence of those facts or circumstances do beyond a reasonable doubt lead you to the conclusion that the crime was committed by the accused."

Conn. 646, 660, 480 A.2d 463 (1984), quoting *State* v. *Corchado*, 188 Conn. 653, 660–61, 450 A.2d 427 (1983)." *State* v. *Marshall*, 3 Conn. App. 126, 129, 485 A.2d 930 (1985). Use of examples or illustrations in jury instructions is proper to make a legal term " 'less abstract and more comprehensible.' " *State* v. *Stepney*, 191 Conn. 233, 247, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d. 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). The jury may be apt, however, to give undue weight to examples because they are easier to understand and they may simply compare the defendant's actions to the example. Id. Caution must be taken, therefore, to indicate that the example is given only to illustrate a point and that the jury must follow the jury instructions as a whole. Id., 247–48.

A review of the record demonstrates that the court's illustrations only clarified the jury's ability to draw or abstain from drawing inferences. The court stressed to the jury that any inferences had to be reasonable and logical and reminded them that, regardless of the inferences they might draw, they must be satisfied that the defendant was guilty beyond a reasonable doubt. The instructions, read as a whole, did not prejudice the defendant and fairly presented the jury with the legal tools with which to fashion its determination of guilt or innocence.

There is no error.

## II

### APPEAL OF THE DEFENDANT AURORA DUMLAO

#### A

The defendant Aurora Dumlao raises numerous claims on appeal, the first of which challenges the sufficiency of the evidence to convict her. We note first that the bill of particulars requested by this defendant stated that "the manner in which the defendant is alleged to

have committed each of the offenses" was "[b]y inflicting a severe beating upon the victim either by use of the hands or other instruments." Her conviction, therefore, had to be based on that portion of the statute that prohibits "any *act* likely to impair the health" of the child. (Emphasis added.) General Statutes § 53-21; see footnote 2, supra. The evidence presented, therefore, had to show that this defendant affirmatively acted to injure the child or impair her health.

She argues that the evidence permitted only negative inferences and therefore was insufficient. This argument is without merit. The evidence was sufficient, not only to negate her statements that the child's fifteen month old brother caused the injuries; it was also sufficient to show that an adult, not another child, caused the injuries, that the defendants were the only adults with the opportunity to injure the child, and that she was the adult who beat the child as claimed in the state's bill of particulars. It is the jury's prerogative to accept or reject the state's version of the evidence; if accepted, there must be evidence to support that version beyond a reasonable doubt. *State* v. *Avcollie,* 178 Conn. 450, 469, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), aff'd, 188 Conn. 626, 628, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983). The jury was entitled to conclude, beyond a reasonable doubt, that the defendant was the child's regular caretaker, that the child was primarily in her care and custody when the injuries were inflicted, and that she was the adult who inflicted the injuries. The conclusion that "the injuries were probably occasioned by someone who is ostensibly caring for the child is simply a conclusion based upon logic and reason. Only someone regularly caring for the child has the continuing opportunity to inflict these types of injuries; an isolated contact with a vicious stranger would not result in this

pattern of . . . injuries . . . . " *People* v. *Jackson,* 18 Cal. App. 3d 504, 507, 95 Cal. Rptr. 919 (1971). When there is evidence that the victim suffers from battered child syndrome and "that the injuries occurred while the child was in the sole custody of the parents," the jury is permitted "to infer not only that the child's injuries were not accidental but that, in addition, they occurred at the culpable hands of its parents." *People* v. *Henson,* 33 N.Y.2d 63, 74, 304 N.E.2d 358, 349 N.Y.S.2d 657 (1973). These were logical inferences which the jury could reasonably draw; *State* v. *Stepney,* supra, 255; and from which the jury could find the defendant guilty beyond a reasonable doubt. *State* v. *Avcollie,* supra.

The defendant also argues that the failure by the prosecution to identify her, by direct evidence, as the culpable party demonstrates that the evidence was insufficient to allow the conviction. We disagree. This was a case substantially based on circumstantial evidence such that no one, including the preverbal two year old victim, could testify from first hand knowledge precisely how the injuries occurred. Circumstantial evidence may be used to prove all elements of a crime beyond a reasonable doubt. *State* v. *Stepney,* supra; *Monroe* v. *Crandall,* 3 Conn. App. 214, 220, 486 A.2d 657 (1985). "In determining whether it was the defendant who had inflicted the injury that caused the child to [suffer], the jury had the right to rely both on the established facts and on the inferences reasonably to be drawn therefrom." *State* v. *Tucker,* 181 Conn. 406, 418, 435 A.2d 986 (1980).

To require that the child's parentage be specifically proved, as the defendant urges, or that each medical witness identify the defendants as the parents of the child they treated, is unnecessary. The fact of parentage is not necessary to establish a violation of General Statutes § 53a-59 or § 53-21. "Identity may be estab-

lished by direct evidence, but direct evidence of identification is not required; circumstantial evidence may be sufficient to establish the identity of . . . persons . . . . The circumstances proved must, however, lead to but one fair and reasonable conclusion pointing to [the] accused to the exclusion of all others as the guilty person and exclude every other reasonable hypothesis except that of [the] accused's guilt." 23 C.J.S., Criminal Law § 920, pp. 647–48. "It is not necessary that the identification be made positively by a witness . . . . " Id., 646. The identity of a person may be based on the identity of his or her name with the name of the accused, especially in "circumstances indicating the improbability of there being two persons of the same name at the same time and place, and where there is no evidence that there is any other person bearing that name." 1 Wharton, Criminal Evidence (13th Ed.) § 103. The evidence indicates that the defendant was adequately identified to permit a conviction: She was identified by the court as being Aurora Dumlao, the person named in the information; the medical witnesses referred to the defendants as the parents of the child or by name; and a police officer testified that he interviewed the parents of the child, referring to the defendant by name. Under the circumstances of this case, an accusing finger need not have been pointed at the defendant in order to allow a conviction; although all the elements of the crime, including who committed it, must be proven beyond a reasonable doubt, they were proven here.[7]

---

[7] The defendant's related argument that the out of court statement she made to the police officers was erroneously admitted because the offering witness did not identify the author of the statement as the defendant being tried is also without merit. The offering witness testified that the statement was given and signed by Aurora Dumlao. The jury knew the defendant's name was Aurora Dumlao. The trial court did not have to require that the witness point out the defendant and testify that the defendant and hearsay declarant were one and the same.

## B

The defendant next claims that the verdicts were inconsistent and cannot stand. " 'Consistency in the verdict is not necessary.' " *State* v. *Cassidy,* 3 Conn. App. 374, 389, 489 A.2d 386 (1985), quoting *Dunn* v. *United States,* 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932). "The defendant was 'given the benefit of [her] acquittal on the counts on which [she] was acquitted, and it is neither irrational nor illogical to require [her] to accept the burden of conviction on the counts on which the jury convicted.' " *State* v. *Cassidy,* supra, 390, quoting *United States* v. *Powell,* 469 U.S. 57, 69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). The defendant's argument that the bill of particulars which she requested intertwined the two counts together in such a way that inconsistent verdicts would be anomalous is without merit. The elements of the crime of third degree assault and the crime of risk of injury differ, and an acquittal on the former charge does not prevent a conviction on the latter. *State* v. *Martin,* 189 Conn. 1, 7 n.2, 454 A.2d 256 (1983).

## C

Finally, the defendant argues that certain items of evidence were improperly admitted. We do not agree that before the medical report from the Naval Hospital or the testimony of the medical witnesses could be admitted it was required that the defendant be pointed to in the courtroom as the spokesperson of the hearsay statements. See footnote 7, supra. Nor do we agree that any "double hearsay" statements, which the defendant challenges but does not specify, were improperly admitted.

The defendant's failure to take an exception to the trial court's final ruling on the admission of the hospital records is fatal to another of her claims on appeal,

namely, that the records were improperly admitted because they were hearsay. "Evidentiary rulings ordinarily must be preserved for appellate review by an exception." *State* v. *Jackson*, 3 Conn. App. 132, 135, 485 A.2d 934 (1985). The defendant objected to the admission of the records on the basis of hearsay when the records were first marked for identification. When the court made its ultimate ruling, allowing the records, but purging them of any references to possible child abuse other than the term, "battered child syndrome," the defendant excepted only to the admission of that term.[8] She did not renew her exception based on hearsay. Id. We therefore decline to consider her claim.

The defendant's statement to the Groton police officers was properly admitted. The statement was made during a police investigation and not after arrest; the statement was made after she was warned of her *Miranda*[9] rights, and included an express waiver of her rights which she signed in the police officer's presence. Assuming without deciding that the defendant's *Miranda* rights attached in this situation; cf. *State* v. *Young*, 191 Conn. 636, 651–52, 469 A.2d 1189 (1983); they may be waived by a knowing and intelligent waiver. *State* v. *Jones*, 193 Conn. 70, 84, 475 A.2d 1087 (1984). The voluntariness of the waiver is a question of fact to be determined by the trial court with reference to the totality of the circumstances surrounding the defendant's statement. Id. This court, however, must make a scrupulous examination of the record to determine if such a finding is supported by substantial evidence. *State* v. *Zayas*, 3 Conn. App. 289, 297, 489 A.2d 380 (1985). Having made that examination,

---

[8] This defendant, however, did not raise on appeal the propriety of the use of the term, battered child syndrome. As discussed, supra, however, we find it was not error to permit its use.

[9] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

we conclude that the trial court's finding of voluntariness was substantially supported and that the defendant's statement was properly admitted.

There is no error.

In this opinion the other judges concurred.