STATE OF CONNECTICUT *v.* NA'IM B.[1]
(AC 26569)

Flynn, C. J., and Rogers and Stoughton, Js.

Argued February 6—officially released May 22, 2007

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the defendant, the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Paul W. Summers*, assistant public defender, with whom was *James B. Streeto*, assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne F. Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Na'im B., appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (1).[2] He was charged specifically with having delayed seeking medical attention for the victim after the child had been injured. The defendant principally claims that the state produced insufficient evidence from which the jury could conclude, beyond a reasonable doubt, that he had committed the crime of risk of injury to a child. Specifically, the defendant argues that the state produced insufficient evidence to prove when he became aware of the child's injury and that he unreasonably delayed seeking medical attention after becoming aware of the injury. We agree.[3]

The jury reasonably could have found the following facts. The four month old victim's hand was severely burned by a hair straightener, or flatiron, either on the

---

[2] The jury found the defendant not guilty of a second count of risk of injury to a child, pursuant to General Statutes § 53-21 (a) (1), and of assault in the first degree, pursuant to General Statutes § 53a-59 (a) (1).

[3] Because our resolution of the defendant's sufficiency of the evidence claim is dispositive, we need not address his other claims.

night of January 12 or the early morning of January 13, 2003. The victim suffered third degree burns, and the presence of burns on the palm and back of the hand suggested that the iron had been opened and placed around the victim's hand. The victim's mother had left the home at 11:30 p.m. to attend a friend's birthday party. The victim and the victim's two older brothers, ages six and three, were left at the home under the supervision of the defendant, who was also the victim's father. Prior to departing, the mother used the hair straightener. The straightener had no on or off switch but needed to be unplugged when not in use. The mother testified that she had forgotten to unplug the iron and instead left it plugged in on the bathroom's windowsill. When the mother left at 11:30 p.m., the victim was uninjured. The mother returned to the home at 1:15 in the morning of January 13, 2003. She went to bed between 3 and 3:30 a.m. When the mother entered the bedroom, the victim and the defendant were already asleep on the bed. Sometime later, one of the mother's older children climbed into the bed, accidentally lying on the victim. The victim awoke and began crying. The defendant tried to feed the victim. Not able to quiet the victim with food, the defendant left the bedroom to get a diaper. At that point, the mother noticed that the victim's hand felt strange. There was no light in the bedroom at the time. The mother carried the victim to the bathroom in order to inspect his hand under the light and realized that it was swollen. The defendant entered the bathroom and noticed that the victim's hand was blistered. The mother returned to the bedroom and called 911 on the bedroom telephone, shortly before 4 a.m.

The state alleged, in its first count, that the defendant "on or about January 13, 2003, at or near . . . Hartford, Connecticut . . . delayed seeking medical attention for [the victim]."

At trial, the state's expert witness testified that blistering, as seen on the victim's hand when the victim was admitted to a hospital, would develop between ten and thirty minutes after the burn was inflicted. The state's expert also testified that a baby would have "screamed bloody murder" at the time of such a burn and would continue to scream until the pain subsided or he screamed himself to sleep, a process that could last between three and fifteen minutes. The mother testified that she did not hear the victim scream until he awoke a little before 4 o'clock that morning.

The jury found the defendant guilty of violating § 53-21 (a) (1), risk of injury to a child, by wilfully failing to seek medical attention promptly to address the victim's severe burn. Judgment was rendered on the verdict, and the defendant appeals.

The defendant's primary claim is that the state failed to produce sufficient evidence to prove each element of § 53-21 (a) (1)[4] beyond a reasonable doubt and that he is entitled to an acquittal.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 110, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).

---

[4] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully . . . permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered . . . shall be guilty of a class C felony . . . ."

Section 53-21 reaches "two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. . . . [A] failure to act when one is under a duty to do so, thereby permitting . . . a dangerous situation to exist, may be sufficient to support a conviction under this statute." (Citations omitted; internal quotation marks omitted.) Id., 117. When the state charges the defendant with a failure to act, the state must show that the defendant reasonably knew of the dangerous situation facing the victim and delayed taking appropriate measures to address the danger. See id.

In determining this issue, we are guided by *State* v. *Dumlao*, 3 Conn. App. 607, 491 A.2d 404 (1985), cited by both parties in their briefs. In *Dumlao*, the two year old victim suffered from battered child syndrome. Id., 608–609. The defendant father, who was not found to have perpetrated the battery, testified that he worked two jobs. Id., 615. His primary argument was that the state did not sufficiently prove that he knew the child was injured because he was at work at the relevant times. Id. The state produced evidence that the battery continued for at least one week. Id. The father lived with the victim, and the child's injuries were severe and plainly visible. Id. From this, the jury could have concluded that the father would have seen the child at some point over the course of the week of the ongoing battery and would have learned that the child was severely injured. Id.

The defendant here argues that the state did not produce sufficient evidence to prove that he knew of the victim's injury at any time before the mother notified him, just prior to calling 911. The state argues that the

jury reasonably could have concluded that the defendant learned of the victim's injury at some point between 11:30 p.m. and 1:15 a.m. The state's theory is as follows. First, it is undisputed that the victim was uninjured when the mother left the home at 11:30 p.m. From this, the jury could conclude that the victim was injured after 11:30 p.m. Second, the mother testified that she did not hear the victim scream after she returned to the home at 1:15 a.m. From this, the state argues, the jury could conclude that the victim was not injured after 1:15 a.m. Thus, the state concludes, the victim must have been injured between 11:30 p.m. and 1:15 a.m. Third, the state notes that the victim was under the supervision of the defendant between the time the mother departed at 11:30 p.m. and the time when she returned at 1:15. a.m. Fourth, the state relies heavily on the expert testimony that a baby will "scream bloody murder" when burned. From this, the state then argues that the victim must have screamed in pain and that the defendant must have heard the victim and known that the victim was injured.

The first weakness in the state's production of evidence is that, unlike in *Dumlao*, there is no evidence as to how old the injury was at the time the mother called 911. The state's expert witnesses testified only that it would take between ten and thirty minutes for blisters to form from the type of burn suffered by the victim. Although there was some testimony that the appearance of burn wounds change over time, there was no testimony about how long the changes take and how long a burn wound would typically appear as it did when the victim was brought to the hospital. None of the state's witnesses testified about the likely time of the burn. The jury had no direct evidence from which to determine whether medical attention to the wound was delayed at all.

The state also produced no evidence that the defendant knew of the injury before the time the mother called 911. The state's argument that if the victim were injured between 11:30 p.m. and 1:15 a.m., he likely would have cried loudly, and the defendant probably would have heard it and, therefore, probably would have known that the victim suffered a severe injury, is too speculative to support a finding of guilt beyond a reasonable doubt.

The judgment of conviction of risk of injury to a child is reversed and the case is remanded with direction to render judgment of not guilty of that charge.

In this opinion the other judges concurred.