## STATE OF CONNECTICUT *v.* NA'IM B.[1]
### (SC 17923)

Norcott, Palmer, Vertefeuille, Zarella and Schaller, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the defendant, the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued April 17—officially released August 12, 2008

*Timothy F. Costello*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anne F. Mahoney*, senior assistant state's attorney, for the appellant (state).

*Paul W. Summers*, assistant public defender, with whom was *James B. Streeto*, assistant public defender, for the appellee (defendant).

### Opinion

NORCOTT, J. The sole issue in this certified appeal is whether there is sufficient evidence to support the conviction of the defendant, Na'im B., of one count of risk of injury to a child in violation of General Statutes

§ 53-21 (a) (1).[2] The state appeals, following our grant of certification,[3] from the judgment of the Appellate Court reversing the judgment of conviction, rendered after a jury trial, of risk of injury to a child arising from the defendant's delay in seeking medical attention for burns suffered by the victim, his four month old son. *State* v. *Na'im B.*, 101 Conn. App. 373, 921 A.2d 679 (2007). On appeal, the state claims that it introduced sufficient evidence to support the defendant's conviction and that the Appellate Court's conclusion to the contrary was improper. Specifically, the state contends that the Appellate Court misapplied the appropriate standard of review and did not adequately consider relevant circumstantial evidence in its analysis. We agree with the state, and, therefore, we reverse the judgment of the Appellate Court.

The record reveals the following facts that the jury reasonably could have found, and the relevant procedural history. On the night of January 12, 2003, the victim suffered third degree burns on both the palm and back of his left hand, which were caused by an electric hair straightener. Earlier that same evening, U, the victim's mother, had used that straightener while preparing to attend a birthday party, but had forgotten to turn it off when she was finished. U left the apartment for the party at 11:30 p.m., leaving the defendant at home with the victim and U's two other sons, ages

---

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

[3] We granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that there was insufficient evidence to support the defendant's conviction of risk of injury to a child in violation of General Statutes § 53-21 (a) (1)?" *State* v. *Na'im B.*, 283 Conn. 903, 903–904, 927 A.2d 915 (2007).

six and three. The victim was not injured when U left the apartment.

U returned home from the party at approximately 1:15 a.m., and was greeted in the hallway by her three year old son. The victim was not crying when U entered the apartment. U sat with her three year old son in the living room until 3 or 3:30 a.m., at which point she went to the master bedroom and found the defendant and the victim asleep on the bed. U did not hear the victim cry at all during the time she was in the living room. U laid down in the bed with the defendant and the victim, but, before she could fall asleep, the three year old entered the room and climbed into bed with them, waking up the victim and causing him to whine and fuss. U started to play with the victim, at which point she noticed that his left hand did not feel normal and would not respond to her touch. U took the victim to the bathroom, where there was more lighting, and saw that his hand was extremely swollen and had formed a large blister. U began yelling at the sight of the victim's hand, at which point he started to cry. U called 911 shortly before 4 a.m.

The police arrived at the apartment at approximately 4 a.m. Both the defendant and U informed the police that the victim had not been injured before U had left for the birthday party at 11:30 p.m., and the defendant further stated that he had been with the victim all night long. The defendant was taken to the police station, where he subsequently gave the following four explanations about how the injury had occurred: (1) he accidentally had burned the victim while preparing a bottle; (2) he had burned the victim either with his lighter or a cigarette; (3) the three year old may have burned the victim with the lighter; and (4) the victim may have crawled over the bed and burned himself on the baseboard heater beside the bed. After further questioning,

the defendant finally claimed that he did not know how the burn had occurred.

The state charged the defendant with two counts of risk of injury to a child in violation of § 53-21 (a) (1),[4] and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[5] Following a jury trial, the defendant was convicted of one count of risk of injury to a child for his wilful delay in seeking medical attention for the victim, but he was acquitted of the other two charges. The trial court sentenced the defendant to ten years imprisonment, execution suspended after thirty-five months, followed by five years of probation.

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, inter alia,[6] that the state produced insufficient evidence from which the jury could have concluded that he was guilty beyond

---

[4] The first count of risk of injury to a child was brought under the "situation" prong of § 53-21 (a) (1), in which the state alleged that the defendant wilfully and unlawfully caused or permitted a child under the age of sixteen years to be placed in a situation that the life or limb of the child was endangered and the health of the child was likely to be impaired; namely, the defendant delayed seeking medical attention for the victim.

The second count of risk of injury to a child was brought under the "act" prong of § 53-21 (a) (1), in which the state alleged that the defendant wilfully or unlawfully did an act likely to impair the health of a child under the age of sixteen years; namely, the defendant burned the hand of the victim.

[5] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[6] The defendant also claimed on appeal that the trial court improperly: (1) failed to disclose all relevant material for cross-examination following its in camera review of sealed files from the department of children and families; (2) excluded the testimony of a social worker from the department of children and families; and (3) refused to admit evidence of U's prior bad acts regarding her failure to seek medical attention for her other children. The Appellate Court did not reach any of these claims, however, because of its conclusion that there was insufficient evidence to support the defendant's conviction. See *State* v. *Na'im B.*, supra, 101 Conn. App. 374 n.3.

a reasonable doubt. Id., 374. The Appellate Court agreed with the defendant, and concluded that there was no direct evidence indicating how old the injury was when U called 911, and, therefore, no evidence indicating that there was a delay in seeking medical attention at all. Id., 378. The Appellate Court further concluded that the state had presented insufficient evidence to prove that the defendant was aware of the victim's injury before U called 911, and that the jury's inference regarding such awareness was too speculative to support a finding of guilt beyond a reasonable doubt. Id., 379. The Appellate Court reversed the judgment of the trial court, and remanded the case with direction to render judgment of acquittal. Id. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the state claims that the evidence was sufficient to support the defendant's conviction beyond a reasonable doubt. Specifically, the state claims that the Appellate Court improperly failed to: (1) consider the circumstantial evidence relied upon by the state to support its theory of when the injury occurred; and (2) view the evidence in the light most favorable to sustaining the verdict when it determined that there was insufficient evidence to show a delay in seeking medical attention or that the defendant was aware of the injury before U called 911. In response, the defendant adopts the reasoning of the Appellate Court in claiming that there was no evidence indicating when the injury occurred from which the jury could conclude that there was a delay in seeking medical attention, and that the state's theory as to the defendant's awareness of the injury was too speculative based on the evidence adduced at trial. We agree with the state and conclude that the evidence was sufficient to support the defendant's conviction.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test.

First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542–43, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). Nevertheless, "[b]ecause [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiom-

atic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 518, 782 A.2d 658 (2001).

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Ledbetter*, supra, 275 Conn. 543.

In order to establish the crime of risk of injury to a child under the "situation" prong of § 53-21 (a) (1), the state must prove that the defendant *wilfully* or *unlawfully* caused or permitted a child under the age of sixteen years to be placed in a situation where the life or limb of the child was endangered, the health of the child was likely to be injured, or the morals of the child were likely to be impaired.[7] Conduct is wilful when "done purposefully and with knowledge of [its] likely consequences." *State* v. *Padua*, 273 Conn. 138, 161, 869 A.2d 192 (2005). A defendant's failure to act when under a duty to do so, which causes a dangerous situation to exist or continue, may be sufficient to support a conviction under § 53-21 (a) (1). *State* v. *Miranda*, 260

[7] The "act" prong of § 53-21 (a) (1), under which the defendant was acquitted, required proof that the defendant *directly perpetrated an act* injurious to the child's moral or physical well-being on the actual person of the child. In contrast, the "situation" prong required proof only that the defendant *created or permitted a situation* inimical to the moral or physical welfare of the child. See, e.g., *State* v. *Padua*, 273 Conn. 138, 148, 869 A.2d 192 (2005).

Conn. 93, 117, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). Because the defendant was charged under § 53-21 (a) (1) with a delay in seeking medical attention, the wilfulness element of the crime required the state to show that the defendant was aware of the victim's injury and its seriousness, and that the defendant purposefully delayed seeking medical attention after becoming so aware. See id.

I

We begin with the state's claim that the Appellate Court improperly concluded that the state did not present any evidence as to how old the injury was at the time U called 911, and that the jury, therefore, had "no *direct* evidence from which to determine whether medical attention to the wound was delayed at all."[8] (Emphasis added.) *State* v. *Na'im B.*, supra, 101 Conn. App. 378. Specifically, the state claims that the Appellate Court improperly did not consider circumstantial evidence from U and the state's experts regarding the chronology of events and the victim's likely responses to being burned, but relied instead on expert testimony regarding the time that it would take for the victim's blisters to appear and develop.[9] The state further con-

---

[8] It is unclear whether the Appellate Court's conclusion in this regard was based on the perceived failure of the state to present evidence as to the *exact* time of the injury, or on the *time frame* in which the injury must have occurred. It certainly is true that there is no evidence in the record to indicate the precise time of injury. Such evidence was not required, however, as long as the state could show that the injury occurred within a certain time frame, the end point of which occurred far enough in advance of when medical attention was sought to constitute a delay.

[9] The state's expert witnesses testified that the victim's blisters would have taken between five and thirty minutes to develop, that they would have changed in appearance over time, and that they had ruptured by the time Richard Garvey, the victim's treating physician, saw him at 8 a.m. the next morning. The defendant claims that this testimony proves that the victim's injury occurred, *at most*, thirty minutes before U called 911. The defendant, however, significantly mischaracterizes the expert testimony. Neither expert testified about when the burning occurred, how long it would

tends that, when the circumstantial evidence upon which it relies is considered cumulatively, and in the light most favorable to sustaining the verdict, it is sufficient to have permitted the jury reasonably to infer that the injury occurred at some point between 11:30 p.m. and 1:15 a.m., at least two hours and forty-five minutes before U called 911. We agree.

We conclude that the state presented substantial circumstantial evidence at trial indicating when the injury must have occurred.[10] Specifically, it is undisputed that the victim was unharmed when U left the apartment at 11:30 p.m. U testified that she did not hear the victim cry between when she returned home at 1:15 a.m. and when she called 911 at 4 a.m., and that the acoustics in the apartment were such that she would have heard him if he was crying. In addition, Richard Garvey, the victim's treating physician, testified that the victim would have "screamed bloody murder" when he was burned, and Seth Asser, a pediatrician, testified that the victim would have been "screaming his head off" for up to fifteen minutes after being burned.[11] From this

take for the blisters to develop to the point they were at when U discovered them, or how long it would take for the blisters to rupture. Indeed, Seth Asser, a pediatrician, testified that the blisters would last until treated, or for up to a day without treatment. Thus, although the expert testimony specifically regarding the age of the blisters does not indicate when the burn occurred, it also does not rule out the possibility that the blisters were at least two hours and forty-five minutes old when U discovered them at 4 a.m. See *State* v. *Martin*, 285 Conn. 135, 148, 939 A.2d 524 (2008) ("[i]n evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence" [internal quotation marks omitted]).

[10] The fact that such evidence relied on by the state is circumstantial is inconsequential, since the jury is free to rely in whole or in part on circumstantial evidence to reach the factual conclusions necessary to support a finding of guilt beyond a reasonable doubt. See, e.g., *State* v. *Ledbetter*, supra, 275 Conn. 542–43.

[11] U's testimony that the victim did not cry at all between 1:15 a.m. and 4 a.m. is not inconsistent with the state's theory that the burn occurred before then, as Asser testified that a baby suffering third degree burns will go through a process known as adaptation, whereby the brain reduces

evidence the jury reasonably could have inferred that the victim screamed when burned, that U would have heard the scream if it had occurred while she was in the apartment, and that, because she did not hear the victim scream, the injury must have occurred when she was not at home. Viewing this evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence to support the reasonable inference that the injury occurred between 11:30 p.m. and 1:15 a.m., when U was not at home.[12]

## II

We next address the state's claim that the Appellate Court improperly concluded that the evidence was insufficient to support the reasonable inference that the defendant was aware of the victim's injury.[13] See *State* v. *Na'im B.*, supra, 101 Conn. App. 379. The state claims that the Appellate Court did not construe the state's evidence in the light most favorable to sustaining the verdict, and that, when so viewed, the evidence was sufficient to support the reasonable inference that the

the pain sensation and allows the baby to stop crying after approximately fifteen minutes.

[12] We note that the Appellate Court did acknowledge some of the evidence upon which the state relied when it described the state's theory of what had happened to the victim. See *State* v. *Na'im B.*, supra, 101 Conn. App. 376, 378. It does not appear to us, however, that the Appellate Court considered this evidence in its analysis thereafter. Had it done so, we cannot see how the court could conclude that "there is *no* evidence as to how old the injury was at the time [U] called 911." (Emphasis added.) Id., 378.

[13] Both parties debate the significance of the Appellate Court decision in *State* v. *Dumlao*, 3 Conn. App. 607, 491 A.2d 404 (1985), with respect to this question. The state claims that the Appellate Court improperly applied *Dumlao* to set an evidentiary standard that the state must meet in order to prove the defendant's awareness of the victim's injury. The defendant claims that the Appellate Court did not cite *Dumlao* for this purpose, but simply cited it in order to distinguish its facts from those in the present case. We agree with the defendant. Additionally, because *Dumlao* is limited to its facts, its relevance in this case is extremely limited, since both parties agree that those facts are entirely distinguishable from the facts in this case.

defendant was aware of the victim's injury when it occurred. We agree.

The state introduced a significant amount of circumstantial evidence to prove that the defendant was aware of the victim's injury when it occurred. In addition to the evidence discussed in part I of this opinion that would have supported the reasonable inference that the victim screamed uncontrollably for up to fifteen minutes when burned, and that any person present in the apartment would have heard those screams, the state offered evidence that the defendant was in the apartment with the victim for the entire night. Although there was no evidence about what the defendant was doing during that time, the evidence did indicate that the defendant is a light sleeper, and that a person in the front living room could hear what was going on in the back of the apartment, even if the television was on. On the basis of this evidence, construed in the light most favorable to sustaining the verdict, we conclude that it was reasonable for the jury to have inferred that the defendant heard the victim cry when the injury took place, and that he was, therefore, aware of the injury from that time on.[14]

We further conclude that the state presented sufficient evidence to permit the jury reasonably to infer

---

[14] The defendant contends that, based on the evidence, this series of inferences is too speculative to support a finding of guilt beyond a reasonable doubt. Specifically, in addition to his claim that there was no evidence to indicate that he *was* aware of the victim's injury, the defendant points to evidence in the record that may have permitted the jury to draw an inference that he *was not* aware of the injury. We disagree, because the jury was not required to draw an inference consistent with the defendant's innocence, when the evidence also was susceptible to a reasonable inference consistent with the defendant's guilt. See, e.g., *State* v. *Ledbetter*, supra, 275 Conn. 542–43. Put differently, "[o]n appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) Id., 543.

that the defendant was aware of the seriousness of the victim's injury. Garvey testified that the appearance of the victim's hand, which was grotesquely charred and blistered, would have taken between ten to thirty minutes to develop. Asser placed the development of the victim's blisters even closer to the time of the injury, within three to five minutes from when the burn occurred. Asser further testified that the victim would have screamed uncontrollably for up to fifteen minutes when he was burned. Given that the defendant was the sole caregiver in the apartment during this time, and that he would have heard the victim's screams, the jury reasonably could have inferred that the defendant knew or should have known of the victim's injury when he started to cry. From that inference, the jury reasonably could have inferred that the defendant was also aware of the seriousness of the victim's injury, since the victim's hand would have developed the severe blister while the victim was crying, or at the very least within minutes from when the victim stopped crying.

Accordingly, the jury reasonably could have inferred that the defendant immediately was aware of the seriousness of the victim's injury, as it is simply inconceivable that a person within such close proximity to a child whose hand was touched with an instrument capable of reaching 140 degrees Celsius or 280 degrees Fahrenheit would not comprehend the seriousness of the injuries caused thereby. See *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985) ("common sense does not take flight when one enters a courtroom"). The Appellate Court, therefore, improperly concluded that the evidence was insufficient to support the jury's verdict.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the defendant's remaining claims.

In this opinion the other justices concurred.